## STICKNEY *v.* STICKNEY.

### APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 243. Argued April 9, 10, 1889.— Decided May 13, 1889.

In a suit in equity in the Supreme Court of the District of Columbia it is competent, under the acts of Congress, for a married woman, who is a party thereto, to disclose, as a witness, directions given by her to her husband respecting the investment of her separate property, though she could not be compelled to make such disclosure against her wishes. Rev. Stat. Dist. Col. §§ 876, 877.

There is no higher presumption that a married woman in the District of Columbia intends, by placing her separate money in the hands of her husband, thereby to make a gift of it to him, than there is that a third person has such intent when he in like manner deposits money with him. 16 Stat. 45, c. 23.

In the District of Columbia, whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him.

THE court, in its opinion, stated the case as follows:

This suit was brought by the complainant below, appellee here, Jeannie K. Stickney, widow of William Stickney, who died in October, 1881, against certain of his heirs, to establish her claim as creditor for the sum of about seventy-nine thousand dollars against the estate, real and personal, held in the name of her husband at the time of his death, and to obtain a decree that said estate be applied to its payment, except so far as may be necessary to discharge his just debts. Her conten-

tion is, that all that estate was acquired by her husband with her moneys received by her as legatee under the will of her deceased father, Amos Kendall, and which were delivered to him to invest for her benefit and in her name, but which without her knowledge, and contrary to her directions, he used and invested in his own name.

Complainant intermarried with William Stickney in January, 1852, and continued his wife until his death in October, 1881. They resided in the District of Columbia, and their married life was one of mutual confidence and affection, nothing ever occurring to mar its happiness. From his marriage to 1857 he was, the greater part of the time, a clerk in the government service. In that year he became secretary of Mr. Kendall, and continued so until the latter's death in November, 1869, receiving a monthly salary of $100, or, as supposed by one of his brothers, a yearly salary of $1500, himself and wife living with and receiving their board from Mr. Kendall. Whilst secretary of Mr. Kendall he received no salary from any other source. He had, however, accumulated a small amount of property, chiefly in lands, but it appears to have been acquired from moneys or proceeds of property given to his wife by her father, or from moneys furnished by him. It is not, however, important for the disposition of the present case to determine whether he had, previous to the death of Mr. Kendall, property in his own right, and if so, the extent of it. The question is, did he receive moneys of his wife to invest for her benefit, which he used and invested in his own name, and, if so, whether the estate which he left standing in his name can be subjected to the payment of the amount thus received.

Mr. Kendall left at his death an estate worth nearly half a million of dollars. By his will he made his four daughters residuary legatees, and provided that payment of any debts which might be due to him from any of them should not be required in money, but should be adjusted in the distribution to them of certain specified bonds. He appointed as executors Mr. Stickney and Mr. Robert C. Fox, his sons-in-law. His will was admitted to probate, and letters testamentary were issued to them. The distributive share which came to Mrs.

Stickney from her father's estate amounted to nearly eighty thousand dollars in money or its equivalent. Mr. and Mrs. Stickney had one son and to him Mrs. Stickney desired in 1879 to make a Christmas present of $1000. At her request Mr. Stickney sent her the money for that purpose. It appears also that Mrs. Stickney received from him at different times checks amounting to $600. No other sum except these is shown to have been paid by him to her of the means she received from her father. The whole went into his hands under directions, and with the understanding, as she asserts, that it was to be invested by him for her benefit and in her name. When she wanted the $1000 mentioned, she wrote to him the following letter : —

"*December* 23, 1879.

"DEAR WILL: I wish 'Will' to have $1000 of the Chicago payment for his Christmas gift. Please bring check for the amount, and the balance invest in my name, as I have asked you to do with all other moneys accruing from my inheritance.

" JEANNIE."

The evidence that Mrs. Stickney expected that her husband would invest her money for her benefit in her name, and that he understood that to make such investment was his duty, consists not merely in her declarations, but in the statements of Stickney himself, made at different times to parties with whom he was dealing. The instances of this kind are numerous, and in their combined force, considered with the presumption attendant on the receipt of money where there is no relation of debtor and creditor between the parties, that the receiver is to hold it subject to the other's order or to invest it for his use, remove all reasonable doubt on the subject. How far the presumptions thus raised are to be deemed rebutted by the fact that there is no proof of any express promise on Stickney's part to comply with her request, and by her failure to call for any account from him or statement as to the investments made, will be hereafter considered. It would seem that the confidence in her husband prevented any suspicion that

her wishes as to the investment of her moneys had not been respected.

The illness of which Mr. Stickney died created no apprehension until within a few hours before his death. He then handed to his wife the keys to his box in the Safe Deposit Company, with instructions to retain them and examine his papers. Upon their examination after his funeral, none were found showing any property in her name; all the property which he held stood in his own name. He died intestate, leaving as his sole heirs and next of kin three brothers and four children of a deceased brother, two of whom were minors. She was appointed administratrix of his estate. The three brothers, upon being acquainted with the situation of affairs, and the fact that the moneys received by her from her father had been used and invested by the deceased in his own name, immediately relinquished to her all their claims to his estate, by a conveyance reciting that he had left in his individual name real and personal property acquired from the proceeds of her sole and separate estate, and formally recognizing her beneficial interest therein. By this conveyance Mrs. Stickney became the owner in her own right of three fourths of her husband's estate absolutely, with a right of dower in the remaining fourth of the real estate, and her distributive share in the personalty. She thereupon, to avoid any litigation over the property with the relatives of her husband, offered to recognize the claims of the infant children of the deceased brother, and to make reasonable compensation to the adult children, provided they would execute a release to her of their claims. The adults declined to execute such a release upon those terms, and the infants were incompetent to do so. Mrs. Stickney accordingly filed the present bill against the four children to determine the controversy, and the justice of her claim to be paid out of the estate of her husband as its creditor, the amount received by him from her separate property, after deducting the $1600 mentioned, which she had received from him.

The adult children answered the bill denying the equities claimed, and pleading the statute of limitations against their

assertion. The minor children, by their guardians *ad litem*, also answered the bill, claiming such interest in the premises as they might be entitled to, and submitting themselves to the protection of the court.

In October, 1882, on motion of the complainant and with the consent of the solicitors of the adult defendants and of the guardians *ad litem* of the infant defendants, the case was referred to the auditor of the court to ascertain and report, upon the evidence to be produced before him, among other things, whether the complainant was a creditor of, or entitled to repayment out of, the estate of her deceased husband, and if so, to what amount, liberty being given to state any special circumstances.

Much testimony was taken by the auditor, and the books of account of the executors of the estate of Amos Kendall and also of William Stickney were produced before him. He reported that the proceeds of the estate of Amos Kendall which came into the hands of his executors were from time to time divided among the legatees, and upon the receipts of the complainant to the executors her share was delivered to her husband, who used and invested the same in his own name without the knowledge of the complainant and in contravention of her express directions; that the books of William Stickney, deceased, showed in most instances the specific use made by him of the moneys which were the share of the complainant, derived from her father's estate; that the complainant never assented to or acquiesced in the use or investment of the property by her husband in his own name; that she intended to retain the apparent as well as the real ownership, the nominal as well as the equitable right; and that he considered himself as her trustee and proclaimed himself as such. The auditor, in applying the act of Congress passed on the 10th of April, 1869, commonly known as the Married Woman's Act, to the facts of the case, held that Mr. Stickney received the moneys as her agent and trustee, and was liable to account to her as such, and that no appropriation or investment by him without authority from her relieved him from such accountability. He reported also that the amount which Mr. Stickney

had received of the moneys belonging to her from her father's estate was $79,971.13, from which he deducted the $1600 mentioned, and found a balance due to her of $78,371.13.

To the plea of the statute of limitations, which was urged by the defendants in bar of the complainant's claim, the auditor replied that there were several answers: first, the complainant's disability by reason of her coverture; second, the character of the indebtedness, which had its origin in a relation of trust; and, third, that not until the death of her husband did she discover that her property was not invested or held in her own names. He, therefore, reported that the complainant was a creditor, and entitled to repayment, out of the estate of her deceased husband, of the amount found to be due to her for moneys received by him which came to her from the estate of her father.

Exceptions were taken to this report, which were heard at a special term of the court, and overruled, and a decree was entered thereon for the complainant, that William Stickney, her husband, was justly indebted to her at the time of his death in the sum of $78,371.13 ; that no portion of it had been paid or satisfied; that, as administratrix of the personal estate of her deceased husband, she was entitled, in the regular course of her administration, to devote to the reduction of the said indebtedness, as against the defendants, and each of them, the undistributed balance of the personal estate in her hands, ascertained by the report of the auditor to be $32,202.08 ; that she be permitted to withdraw from the register of the court $2650.26, previously paid into it by her, after deducting the clerk's fees; and that the real estate of the said William Stickney at the time of his death, or so much thereof as might be necessary, be sold for the payment of the commutation of her dower therein, and the balance of said indebtedness. On appeal to the court in general term this decree was affirmed. To review that decree the case is brought by appeal here.

*Mr. S. S. Henkle* for appellants.

I. Mrs. Stickney's testimony concerning her conversations with her husband is incompetent. Such conversations are ex-

cluded on the ground of public policy, 1 Greenl. Ev. 254, 334, 343; and that disability is not removed by §§ 876 and 877 of the Revised Statutes of the District of Columbia. *Holtzman v. Wagner*, 5 Mackey, 15; *Lucas v. Brooks*, 18 Wall. 436, 452.

In *Jacobs v. Hesler*, 113 Mass. 157, a wife testified before the audjtor that she gave money of her separate estate to her husband, to invest for her in United States bonds, which he promised to do, but did not do, but used the money in his business. The auditor reported the facts as above, if her testimony as to conversations between her husband and herself was competent; if not, then he found the fact to be that she placed the money in her husband's hands without any agreement, and that he used it in his business. The Supreme Court of Massachusetts held the conversations incompetent. Mr. Justice Gray said: "It must be deemed incompetent evidence as a conversation between husband and wife."

II. The essential facts established by the evidence do not make Mrs. Stickney a creditor of her husband's estate.

At common law all the personal property and money of the wife which was reduced to possession by the husband became absolutely his. *Tower v. Hagner*, 3 Whart. 48; *Kesner v. Trigg*, 98 U. S. 50. In equity, however, the wife might have a *separate estate* which was not subject to the control of the husband and of which she had the absolute *jus disponendi* as if she were *feme sole*. *Caton v. Rideout*, 1 McN. and G. 599. This *separate estate* was usually settled upon trustees for her use, but might be vested in herself without the intervention of trustees. *Hardy v. Van Harlingen*, 7 Ohio St. 208; *Jones v. Clifton*, 101 U. S. 225. As to the control and disposal of the income of her *separate estate* she was as independent of the control of her husband as though she were *feme sole*. *Muller v. Bayley*, 21 Gratt. 521; *Hardy et al. v. Van Harlingen, ubi supra*. She might loan the income of her *separate* estate to her husband and take his note or bond for it, or she might give it to him. She might be a creditor of her husband, as to this, and enforce the obligation.

The Married Woman's Act of the District of Columbia is contained in §§ 727 to 730 inclusive, Rev. Stat. Dist. Col.

By this act the wife becomes the absolute owner of all her property, real and personal by operation of law, and.her separate estate is no longer confined to the estate which was settled to her use by deed or devise, and she now has the *jus disponendi* of the principal as well as the income. She may deal as to her separate property with all the world, including her husband, she may loan it, or give to her.husband or anybody else without limit or restraint. So far the construction of these modern enabling acts is uniform.

As to what acts, or facts will be construed into a gift or loan from the wife to the husband, there is some diversity in the decisions of the courts in the different States, where these acts have been adopted. The only cases cited by the auditor to sustain his conclusion that the use by the husband of his wife's money by her consent, without more, made him her trustee for the money, and made him or his estate liable to her as a debtor, are *Johnston* v. *Johnston*, 31 Penn. St. 450; *Gochenauer's Estate*, 23 Penn. St. 460; *Grabill* v. *Moyer*, 45 Penn. St. 530.

It will not be controverted but that the weight of authority in Pennsylvania sustains the auditor; but there are even there cases which do not. See *Nagle* v. *Ingersoll*, 7 Penn. St. 204.

This Pennsylvania doctrine is opposed to the line of decisions in Maryland, from 'which the District of Columbia derives its jurisprudence. *Grover & Baker Sewing Machine Co.* v. *Radcliff*, 63 Maryland, 496; *Farmers' and.Merchants' Bank* v. *Jenkins*, 65 Maryland, 245.

In *Jenkins* v. *Middleton*, 68 Maryland, 540, decided in 1888, the Court of Appeals said: "It is settled upon the soundest reasons, that if a man uses the money of his wife with her acquiescence, she does not acquire a claim against him or his estate, unless at the time of the receiving or using of the money he made her an express promise to repay it." "It is useless to agitate the question because it is the settled law of the court. Not to speak of former decisions, it has recently been declared in *Grover & Baker Sewing Machine Co.* v. *Radcliff*, 63 Maryland, 496; *Farmers' and Mechanics' Bank* v. *Jenkins*, 65 Maryland, 245. It is vain to argue that Mid-

dleton loaned the money to himself and his partner jointly. *He could not become a sole debtor or a joint debtor to his wife without an express promise."*

This doctrine prevails in the other States and in England. *Monroe* v. *May*, 9 Kansas, 466; *Logan* v. *Hill*, 19 Iowa, 491; *Jacobs* v. *Hesler*, 113 Mass. 157; *Caton* v. *Rideout*, 1 McN. & G. 597; *Muller* v. *Bayley*, 21 Grattan, 529; *Hardy* v. *Van Harlingen*, 7 Ohio St. 209.

The circumstances of this case show that Mr. Stickney used the money of his wife as *husband*, and not as *trustee*. Consequently he, in his lifetime, was not responsible to her for it, nor is his estate since his decease.

III. Since the enabling statutes, the wife is *sui juris* as to her separate property, and may sue in her own name any one who interferes with it, even her husband. She may loan her separate money to her husband and enforce payment as against a stranger. *Emerson* v. *Clayton*, 32 Illinois, 493; *Monroe* v. *May, ubi supra; Drury* v. *Briscoe*, 42 Maryland, 151.

IV. The disability of a married woman being removed, the statute of limitations so far as her separate property is concerned, applies to her as well as to any other person. *Castner* v. *Walrod*, 83 Illinois, 171; *Wilson* v. *Wilson*, 36 California, 450; *S. C.* 95 Am. Dec. 194.

*Mr. John Selden* for appellee.

Mr. Justice Field, after stating the case as above reported, delivered the opinion of the court.

The exceptions to the auditor's report, calling for consideration, are founded upon two grounds: one, the supposed incompetency of the complainant to testify as to directions given to her husband to invest moneys of her separate estate for her benefit and in her name; and the other, the supposed conclusiveness of the presumption that moneys belonging to the separate estate of the wife, when she allows her husband to use them, become gifts to him.

The general rule of the common law is, that neither husband nor wife is admissible as a witness for or against each other in any case, civil or criminal. This exclusion, as Greenleaf says, is founded partly upon the identity of their legal rights and interests, and partly on principles of public policy, that the confidence existing between them shall be sacredly protected and cherished to the utmost extent, as being essential to the happiness of social life. But this doctrine has been modified in several States, in many particulars, by direct legislation upon the subject, such as that neither husband nor wife shall be compellable to disclose any communication made to him or her during the marriage, as in New York. A voluntary statement is receivable under such a statute. *Southwick* v. *Southwick*, 2 Sweeny (N. Y.) 234. In some States the statutes include only private conversations in the privilege, but not such as take place in the presence of others. *Fay* v. *Guynon*, 131 Mass. 31. The Revised Statutes of the United States relating to the District of Columbia, on the subject of witnesses, provide as follows:

" SEC. 876. On the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action or other proceeding in any court of justice in the District, or before any person having by law or by consent of parties, authority to hear, receive and examine evidence within the District, the parties thereto, and the persons in whose behalf any such action or proceeding may be brought or defended, and all persons interested in the same, shall, except as provided in the following section, be competent and compellable to give evidence, either *viva voce* or by deposition, according to the practice of the court, on behalf of any of the parties to the action or other proceeding.

" SEC. 877. Nothing in the preceding section shall render any person who is charged with an offence in any criminal proceeding competent or compellable to give evidence for or against himself; Or render any person compellable to answer any question tending to criminate himself; Or render a husband competent or compellable to give evidence for or against his wife, or a wife competent or compellable to give evidence

for or against her husband, in any criminal proceeding or in any proceeding instituted in consequence of adultery; Nor shall a husband be compellable to disclose any communication made to him by his wife during the marriage, nor shall a wife be compellable to disclose any communication made to her by her husband during the marriage."

These provisions dispose of the objection of counsel. Mrs. Stickney was at liberty, though not compellable, to state the directions given by her to her husband respecting the investment of her money. And without this qualification of the rule of the common law we are inclined to think that the changed law respecting her separate property, created by the Married Woman's Act of April 10, 1869, c. 23, 16 Stat. 45, would require for its successful enforcement some modification of the common law rule as to a husband or wife being a witness where a controversy arises between them relating to the disposition of her separate personal property. That property no longer, as at common law, vests in her husband by the marriage. That act provides as follows:

"Sec. 1. That, in the District of Columbia, the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were *feme sole*, and shall not be subject to the disposal of her husband, nor be liable for his debts; but such married woman may convey, devise and bequeath the same, or any interest therein, in the same manner and with like effect as if she were unmarried.

"Sec. 2. That any married woman may contract, and sue and be sued, in her own name, in all matters having relation to her sole and separate property in the same manner as if she were unmarried; but neither her husband nor his property shall be bound by any such contract nor liable for any recovery against her in any such suit, but judgment may be enforced by execution against her sole and separate estate in the same manner as if she were sole."

So far as her separate property is concerned, a married woman thus becomes as absolute owner as though she were

unmarried, and it would seem should also have the same protection, through her own evidence, as a *feme sole*. We do not think, therefore, that the exception of the defendants is well taken. With the testimony of Mrs. Stickney, corroborated as it is in many particulars by statements of others and by the books of her husband and those of the executors of the estate of Amos Kendall, there can be no serious contention as to the correctness of the conclusions reached by the auditor as to matters of fact involved, upon the evidence presented to him.

This view of the admissibility of Mrs. Stickney's testimony disposes also of the supposed presumption, arising from her allowing her husband to use the moneys of her separate estate, that she intended them as a gift to him. Any presumption of that kind, if it would otherwise arise in the case, was entirely rebutted by her repeated and express directions to invest the moneys for her benefit in her own name. But we are of opinion that, in the absence of her testimony, there would be no presumption, since the passage of the Married Woman's Act, that she intended to give to her husband the moneys she placed in his hands, any more than a gift would be inferred from a third person who in like manner deposited money with him. If there be no proof of indebtedness to the party receiving the moneys, the presumption would naturally be that they were placed with him to be held subject to the order of the other party, or to be invested for the latter's benefit. We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him. In *Grabill* v. *Moyer*, 45 Penn. St. 530, 533, the Supreme Court of Pennsylvania, in speaking of the effect of an act of that State, passed on the 11th of April, 1848, containing provisions similar to the Married Woman's Act of the District of Columbia, said : " When the act of assembly declares, as it does, that all property, real, personal and mixed, which shall accrue to any married woman during coverture, by will, descent, deed of conveyance, or

otherwise, shall be owned, used, and enjoyed by such married woman, as her own separate property ; when the leading purpose of the act is to protect the wife's estate by excluding the husband, it is impossible for us to declare that the mere possession of it by the husband is proof that the title has passed from the wife to him.   After it has been shown, as it was in this case, that the property accrued to the wife by descent from her father's and brother's estates, the presumption necessarily is that it continued hers.   In such a case it lies upon one who asserts it to be the property of the husband to prove a transmission of the title, either by gift or contract for value, for the law does not transmit it without the act of the parties.   If mere possession were sufficient evidence of a gift, the act of 1848 would be useless to the wife.   Nothing is more easy than for the husband to obtain possession, even against the consent of the wife.   And where he obtains it with her consent, it can be at most but slight evidence of a gift."

The case of *Bergey's Appeal*, 60 Penn. St. 408, cited by the auditor in his report, is in point here.   Bergey received money belonging to his wife, being her patrimonial portion, in her presence, and both united in a receipt for it.   Not a word was spoken by the wife when her husband took up the money to count it, and put it in his pocket.; nor was a word ever heard afterwards to the effect that the wife had made a gift of it.   The husband appropriated it to the purchase of a farm, and the Supreme Court of the State held that no inference could arise of a gift from the transaction as detailed, observing that " she was not bound to attempt a rescue of it from him, or proclaim that it was not a gift.   She might rest on the idea that his receipt, in her presence, was with the intent to take care of it for her.   In *Johnston* v. *Johnston's Administrator*, 31 Penn. St. 450, this court said, in a case of the nature of this, ' as the law made it (the money) hers, it presumes it to have been received for her by her husband.'   That case contrasts the presumptions arising from the receipt of money by husbands, prior and subsequent to the act of 11th of April, 1848.   In the first period, the presumption is that he has received it under and by virtue of his marital

power as his own; in the second, the presumption is the oppo-
site, that he received it for his wife, the act of assembly hav-
ing declared it hers, and for her 'sole and separate use.'"
And again: "If it was not a gift, the husband was a trustee
for his wife, and whether he kept the money in his pocket or
put it into real estate which he had purchased, honesty re-
quired that he should account to her for it. He could be
compelled to do so in equity."

There are decisions of courts of some of the other States,
holding that a presumption arises of a gift from the wife to
the husband of moneys placed by her in his hands, unless an
express promise is made by him at the time that he will ac-
count to her for them or invest them for her benefit. But
the decisions we have cited are more in accordance, we think,
with the spirit and purpose of the Married Woman's Act, and
only by conformity with them can it be fully carried out.
Here there are no creditors alleging that they gave credit to
the deceased upon his supposed ownership of the property
standing in his name, or any other circumstance calling for
any qualification of the widow's right to claim an application
of that property to the payment of the moneys by which it
was acquired, received from her to be invested for her benefit,
and in her name.

*Decree affirmed.*