## SMITH v. COOK.

ATTORNEY AND CLIENT; EVIDENCE; HUSBAND AND WIFE; JUDGMENT CREDITORS' SUITS; FRAUD.

1. The relation of debtor and creditor arises between client and attorney when the services of the attorney are contracted for, and his status as a creditor from that time is not affected by the fact that the amount of the compensation was not ascertained and agreed upon.

2. A married woman is a competent witness in a judgment creditors' suit against herself and husband to set aside as in fraud of his creditors, a conveyance of land alleged to have been purchased by him but conveyed by court trustees to her through his procurement, and her testimony must be received and considered notwithstanding it embraces transactions with her husband upon which her claim of separate estate is founded.

3. The purchase of property by the wife of an insolvent debtor during coverture is to be regarded with suspicion unless it clearly appears that the consideration was paid out of her separate estate, and in a contest between the creditors of the husband and the wife there is a presumption against her which she must overcome by affirmative proof.

4. The evidence in such a suit considered, and that offered on behalf of the defendants determined to be insufficient to rebut such a presumption.

No. 621. Submitted November 17, 1896. Decided April 6, 1897.

HEARING on an appeal by the defendants from a decree vacating a conveyance of real estate and directing its sale, in a judgment creditors' suit. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. A. A. & T. W. Birney* for the appellants.

1. The wife was a competent witness. She was the real defendant to the suit; her husband is only a nominal party not interested in the result. This question has been directly passed upon by the Supreme Court of this District in general term. *Beale* v. *Brown,* 6 Mack. 574. See also *Ratcliff* v. *Van Dykes,* 15 S. E. 864; *Fitch* v. *Hill,* 11 Mass. 286 ; *Sembre* v. *Sembre,* 11 South. 942; *Purdy* v. *Purdy,* 30 Atl. 695; *Buckingham* v. *Roar,* 63 N. W. 598 ; *Thomas* v. *Selman,* 13 S. E. 146 ; *Hayes* v. *Mutual Assn.,* 76 Va. 225; *Farley* v. *Tillan,* 86 Va. 275.

2. Where a complainant charges fraud and fails to prove it, he may not prevail on any other ground, but his bill must be dismissed. *Eyre* v. *Potter,* 15 How. 42; *Clark* v. *Krause,* 2 Mackey, 559. In this case the complainant utterly failed to prove his charge of fraudulent intent. Fraud consists in intention, and such intention is a fact to be averred, and to be determined only upon careful scrutiny of the evidence, for the courts never presume fraud. *Clark* v. *Krause,* 2 Mack. 559 ; *Moss* v. *Riddle,* 5 Cr. 351 ; *Smith* v. *Vodges,* 92 U. S. 183; Bump on Fraud. Convey. 485.

3. Even if the court should regard the transaction in 1873

as a settlement upon the wife, complainant, a subsequent creditor, would have no standing in court for condemnation of this land to his debt. To defeat a settlement made by a husband upon his wife, it must be intended to defraud existing creditors, or creditors whose rights are expected shortly to supervene, or those whose rights may and do so supervene. *Smith* v. *Vodges*, 92 U. S. 183; *Horbach* v. *Hill*, 112 U. S. 144; *Schreyer* v. *Scott*, 134 U. S. 405; *Wallace* v: *Penfield*, 106 U. S. 260; *Sexton* v. *Wheat*, 8 Wheat. 229; *Wallingford* v. *Allen*, 10 Pet. 583; *Trust Co.* v. *Sedgwick*, 97 U. S. 304; *Joues* v. *Clifton*, 101 U. S. 225; *Mattingly* v. *Nye*, 8 Wall. 370.

*Mr. William A. Cook, Mr. Wm. J. Miller* and *Mr. W. L. Cole* for the appellee:

1. Husband and wife are not competent witnesses for or against each other. 1 Greenleaf Ev., Secs. 334, 335; 1 Wharton Ev., Sec. 422 and cases cited; *Lucas* v. *Brooks*, 18 Wall. 436; *Clark* v. *Krause*, 2 Mack. 559; *Holtzman* v. *Wagner*, 5 Mack. 15; *Haller* v. *Clark*, 21 D. C. 132. The doctrine established by these cases has never been overruled.

2. The testimony in this case abundantly establishes fraud in fact. It is not necessary that there should be direct proof to show the fraud; it may be inferred from the facts and circumstances of the case, where those facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the conveyance was made with intent to hinder, delay or defraud existing or future creditors. *Rose* v. *Brown*, 11 W. Va. 134; Wait on Fraud. Convey. 157 *et seq.*

3. The several conveyances of real estate to the female appellant are void under the statute of 13 Elizabeth, Ch. 5, in force in this District. Upon the marriage of the appellants in 1863, the personal property of the wife, including money, became her husband's, and did not revert to her.

*Matter of Grant,* 2 Story, 312; *Hewitt* v. *Burritt,* 3 App. D. C. 229; *Tarney* v. *Turner,* 2 Flip. 735.

The husband and wife were incompetent to contract with each other, as they claim to have done, or to have divided their estate and property between them. 9 Am. & Eng. Encyc. L., 817 *et seq.; Robey* v. *Phelam,* 118 Mass. 542. A married woman living with her husband cannot carry on business as a sole trader. The business and profits belong to her husband. *Hitchcock* v. *Richold,* 5 Mack. 414. The only respect in which her common law rights and powers are enlarged by the statutes are in matters having relation to her separate estate. *Solomon* v. *Garland,* 2 Mack. 113. Property derived from her husband, directly or indirectly, does not constitute separate estate. *Williams* v. *Reid,* 19 D. C. 46; *Cammack* v. *Carpenter,* 3 App. D. C. 219.

Earnings of the wife while living with her husband are not made her separate estate by the act of 1869. "She can have them only by gift, and it is not protected against his creditors." *Seitz* v. *Mitchell,* 94 U. S. 580. Purchases of of real estate made by the wife during coverture are regarded with suspicion; and in contests between the husband's creditors and herself the burden is upon her to show clearly and incontrovertibly that it was paid for by her and out of her separate estate. *Seitz* v. *Mitchell, supra; Bayne* v. *Edlin,* 62 Md. 100; *Matter of Grant,* 2 Story, 313. And in such cases, the testimony of the husband and wife in support of her title, if not wholly inadmissible, is entitled to little weight. *Gamber* v. *Gamber,* 18 Pa. St. 363.

The settlement by a husband upon his wife of his entire estate, which is shown to be very great, can in no just sense be deemed reasonable provision for her, and will not be upheld by a court of equity. Story's Eq. Jur., Secs. 1374, 1375.

4. A party bound by a contract upon which he became liable for the payment of money, although his liability may be contingent, is a debtor within the meaning of the statute against voluntary conveyances. The date when the obliga-

tion came into existence governs in determining the attacking creditor's rights. Wait on Fraud. Convey., Sec. 90; *Van Wyck* v. *Seward*, 18 Wend. 375; *Young* v. *Herman*, 66 N. Y. 377.

5. In respect to the lots in square 245, purchased by William Smith from A. S. Worthington, trustee, the legal as well as equitable title is in the former. The sale was ·made to him, he complied with the terms of sale, and his purchase was ratified by decree of court. This vested the legal title in him, and it could be divested only by his deed or by decree of court. R. S. D. C., Sec. 793. The deed of the trustee to the wife was without shadow of authority and void. See *Gresham* v. *Lambert*, 1 Green (N. J. L), 182; *Rigby* v. *McNamara*, 6 Ves. 515; *Walton* v. *Hale*, 9 Gratt. 194; 2 Daniel's Ch. Pr. 1285.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This is an appeal from a decree sustaining a creditor's bill. The bill is founded on a judgment for the sum of $1,275, besides interest and costs, recovered by the appellee, William A. Cook, in the Supreme Court of the District of Columbia, against William Smith, on the 6th day of November, 1893.

Alleging the return of execution thereon unsatisfied, and the complete insolvency of said Smith, the bill seeks to set aside conveyances of four different parcels of property charged to have been purchased by said Smith, but conveyed, through his procurement, to his wife, the appellant, Celestia A. Smith. One of these, which the decree annulled, is a deed made by J. C. Heald, trustee, to Celestia A. Smith, November 5, 1877, conveying sublots C and D, in C. L. Coltman's subdivision in square 245. The decree is silent as to the other conveyances, and directs the sale of the foregoing lots for the satisfaction of the judgment.

Appellee is an attorney at law, and the demand converted into his judgment was for legal services rendered. He was retained by William Smith, in 1873, to conduct the

defence of a suit in equity begun in the Supreme Court of the District, in that year, by one Dunbar against Smith and others for an account and settlement of certain partnership matters growing out of certain contracts for labor performed for the District of Columbia. This suit, begun July 14, 1873, was not finally disposed of until November 26, 1891, and during the whole time said Cook acted as the solicitor of the defendant Smith. During the time he also represented Smith in an action at law brought against him for damages for malicious prosecution. Both suits seem to have ended in Smith's favor.

2. It is quite clear that appellee must be regarded as a creditor of William Smith at the time of the conveyance made by the trustee to Celestia A. Smith. Smith's obligation to him arose when the services were contracted for, and his status as a creditor, from that time, is not affected by the fact that the amount of the compensation was not ascertained and agreed upon. Wait, Fraud. Conv., Sec. 90.

3. It is equally clear that Mrs. Smith was a competent witness in the case, and her testimony must be received and considered in its determination notwithstanding it embaced transactions with her husband upon which her claim of separate estate is founded. R. S. D. C., Secs. 876, 877; *Stickney* v. *Stickney*, 131 U. S. 227, 237; *Beale* v. *Brown*, 6 Mackey, 574, 576.

The property involved is her sole and separate estate, subject only to the possible rights of creditors existing at the time that her title was acquired, and she is the real substantial defendant. Her husband is but a formal party, because he is the judgment debtor, and also because the property in controversy, having been derived through money coming originally from him, may not constitute her sole and separate estate under the Married Woman's Act; for it is only in matters having relation to her statutory sole and separate estate that the wife can sue and be sued as if she were unmarried. R. S. D. C., Sec. 729.

4. It appears from the evidence of Mrs. Smith, that, before his marriage, William Smith had followed the business of a sutler. They married in 1863, and he commenced business in Washington as a sewing machine agent and pawnbroker. She had about $2,000 at the time of the marriage, which she gave to him for investment in the business aforesaid, and he probably contributed $4,000.

The business was carried on with success in his name until 1872, she giving it her constant attention also. In that year he concluded to enter into business as a contractor, in view of the great amount of work then contemplated in the improvement of the city of Washington. Regarding the contracting business as risky, she concluded that it was best to have a settlement with her husband, and carry on the pawnbroking business on her own separate account. She says that she paid him back the money he had invested, together with his proportionate share of the profits. But she could not state the exact sum paid him, or approximate it, because her books and papers had been lost or destroyed. She carried on the business successfully until 1886, when she retired. She claims to have invested her money from time to time, and to have paid therewith for all the real estate involved in the suit.

The title to the M street lots, which has been annulled in the decree, was acquired in the following manner: These lots were decreed to be sold in the case of *Coltman* v. *Moore,* on March 2, 1875, by the Supreme Court of the District of Columbia, and A. S. Worthington, Esq., was appointed trustee for that purpose. The trustee's report of sale, which was confirmed, shows that the lots were sold November 2, 1875, to William Smith for $15,943, he paying one-third in cash and giving his notes for the remaining two-thirds, payable in one and two years, respectively. On December 17, 1875, William Smith, under seal, assigned and transferred to Celestia A. Smith all of his right, title, and interest in the said purchase, and requested the trustee to convey

the same to her. This instrument recited a consideration of $10 as paid, and the fact that he had bid for and purchased the property as the agent of his said wife. On November 5, 1877, J. C. Heald, who had been appointed trustee upon the resignation of Mr. Worthington, conveyed the lots to Celestia A. Smith, reciting all the proceedings, the transfers to Mrs. Smith, and the payment in full of the purchase money.

Mrs. Smith says that the purchase was made by her husband as her agent and at her request, and that she paid the entire purchase money. She went into possession, built two houses, and otherwise improved the property at a cost of about $35,000. At the time she testified the property worth about $90,000. She says that all of the money used in the purchase and improvement of these lots and those described in other conveyances was her own, and that none of it was furnished by her husband. It appears that he was engaged in contracting from 1872 until some time in 1874 or 1875.

It does not appear that he had a contract that entailed serious loss. Evidence of defendants tended to show that he made money for a time at least, and had good credit. In his answer to the Dunbar bill, filed January 15, 1874, he said that he was solvent and amply able to meet all his own liabilities as well as those of the partnership to which he belonged. Mrs. Smith said that he owed no debts that she knew of. There is some evidence in the record tending to show anxiety on his part to secure his property to his wife, especially about the time the Dunbar suit was begun. This suit, as we have seen, began in July, 1873, and ended in November, 1891.

No title to property appears to have been taken in the name of William Smith after 1873. A small farm that he had purchased in Virginia passed, about that time, to his wife, in a manner that is unexplained; and all subsequent purchases were made by her in person or through him as her agent, and title taken to her.

Inferences fairly deducible from these and other circumstances, make out a case which the defendants are called upon to overcome. As was said by the Supreme Court of the United States, in an analogous case:

"Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property, are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife, there is, and there should be, a presumption against her which she must overcome by affirmative proof. Such has always been the rule of the common law; and the rule continues, though statutes have modified the doctrine that gave to the husband absolutely the personal property of the wife in possession, and the right to reduce into his possession and ownership all her choses in action. Authorities to this effect are very numerous." *Seitz* v. *Mitchell*, 94 U. S. 580, 582.

The evidence on behalf of the defendant is deficient in some important particulars, and wholly unsatisfactory. She makes no reasonable statement explaining her enormous profits as a pawnbroker, that enabled her, while keeping up the business, to invest more than $50,000 in the purchase and improvement of real estate within five years.

Nor is any satisfactory explanation made of the use or disposition of the money with which William Smith commenced business as a contractor. That he made money in that business is not an unreasonable inference from the evidence; it certainly does not show how or where he lost any of it.

We find no error in the record, and the decree will be affirmed, with costs; and it is so ordered.          *Affirmed.*