**BUCK et al. v. HELVERING, Commissioner of Internal Revenue.**

**HELVERING, Commissioner of Internal Revenue, v. BUCK et al.**

**No. 7043.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 19, 1934.

Norman A. Eisner, of San Francisco, Cal., for taxpayer.

Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for the Commissioner of Internal Revenue.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

PER CURIAM.

From decisions of the Board of Tax Appeals based upon the findings and opinion of the Board, involving several distinct issues, all presented at the same time and being between the same parties, separate petitions to review are prosecuted.

John A. Buck died testate on April 6, 1923, being then a resident of San Francisco. The executors are here representing the estate. The questions presented relate to controversies arising under the income tax statutes as being interpreted and enforced by the Commissioner of Internal Revenue.

We will pass upon the different questions presented separately.

First, on the matter of the petition of the Commissioner of Internal Revenue. The executors claim the right to deduct from the gross estate $13,684.83, the amount of a claim filed against the estate by the Matson Navigation Company, which represents the decedent's liability as a stockholder of the Mason By-Products Company for his proportionate part of an indebtedness of that company to the claimant, Matson Navigation Company.

The claim was allowed by the probate court, but had not been paid at the time of the hearing before the Board. The question is whether this sum may be deducted from the gross estate as a claim against the estate within the meaning of section 403 (a) (1) of the Revenue Act of 1921 (42 Stat. 227, 279). The Board of Tax Appeals held that this sum of $13,684.83 should be deducted as a claim against the estate. For the Commissioner it is contended that in construing the statute, which provides for the deduction from the gross estate of "claims against the estate," the word "claims" should be restricted to claims arising out of contracts of the decedent, and should not be construed as applying to the ordinary liability of a stockholder in California or elsewhere. It is further contended that a claim based on a stockholder's liability for debts of a corporation does not constitute a "personal obligation" of the decedent, and is not a "claim against the estate" within the meaning of the statute.

Under section 3 of article 12 of the Constitution of California (at the time in question), "each stockholder of a corporation * * * shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder. * * * "

The debt giving rise to the claim in question was incurred during the time the decedent held stock in the debtor corporation. The claim was not barred by the statute of limitations and was allowed by the probate court. Section 1497 of the Code of Civil Procedure of California, as amended by Code Amendments 1880, p. 90, then in effect, provided:

"Every claim allowed by the executor or administrator, and approved by a judge of the superior court, or a copy thereof as hereinafter provided, must, within thirty days thereafter, be filed in the court, and be ranked among the acknowledged debts of the estate, to be paid in due course of administration."

The estate was liable on this claim. The Board of Tax Appeals found that this claim had not been paid by the corporation, but this finding is opposed to the admission of the petitioners in the proceeding before the Board of Tax Appeals.

In his opening statement, Norman A. Eisner, Esquire, counsel for the estate of John A. Buck, petitioner before the Board of Tax Appeals, stated as follows:

"The other specification (m) was the amendment to the petition which I have already generally stated, the claim of the Matson Navigation Company for the sum of $13,-684.93 which was presented as a legal claim against the estate.

"I want to say that this amount, although a legal claim against the estate and presented as such was not paid by the estate.

"The corporation in which the stock was held, apparently insolvent at the time of the death of decedent, long afterwards was able to make payment to this creditor so that the claim, although a legal obligation against the estate at the time of death and presented and allowed as such, was not, in fact paid by the estate."

■ Under the California law the stockholders' liability, as it existed at the time of the death of the deceased, was for his pro rata proportion of each and every debt of the corporation regardless of the financial resources of the corporation, or of its solvency. The liability continued after the stockholder sells his stock and in the case of a bank, for instance, where there is a pro rata liability to every depositor the statutory obligation of a stockholder would be in the aggregate very great. In view of this peculiar and unusual liability, a liability that in the case of a solvent and going corporation is not at all likely ever to be enforced where in practical effect the stockholders' liability is rather that of surety than that of a primary debtor, although as a matter of law the liability of the stockholder is primary, we hold that the payment by the corporation of its indebtedness should be considered as satisfying the claim against the estate as of the date of the death of the deceased. If the debt of the corporation is paid by the corporation before it is paid by the stockholder, the liability of the stockholder is extinguished. For purposes of appraisement of the estate for the fixing of the federal estate tax, the stockholders' liability should be considered as a potential rather than an actual claim, until it is paid by the estate, or it is reasonably certain that it must be paid.

■ John A. Buck, at the time of death, was the owner of ninety-five shares of the capital stock of the California Barrel Company, a California corporation. Within the period fixed for the presentation of claims, Wells Fargo Bank & Union Trust Company presented a claim in the sum of $8,105.14 against the estate, based on stockholders' liability arising by reason of the ownership of the said California Barrel Company stock. This claim was scheduled as an indebtedness. Before any action had been taken upon the claim by the executors, a suit was instituted against the estate to collect the obligation. The suit was settled by Frederick J. Koster, one of the principal stockholders of the estate in exchange for the ninety-five shares of stock which the estate held in that company, and which had been reported in the estate tax return as having no value. The stockholders' liability of the estate to the Wells Fargo Bank & Union Trust Company, because of its ownership of stock in the California Barrel Company, although reduced to judgment against the estate amounting to $8,105.14, was paid in effect by assigning the shares of stock of the estate in the California Barrel Company to a person who assumed and paid the $8,105.14 judgment. The stock of the estate in the California Barrel Company had been assessed as worthless. Either the stock should be appraised as of the value of the amount for which it was sold ($8,105.14), or the claim which was extinguished by its assignment

should not be deducted from the estate. The Board of Tax Appeals properly disallowed this deduction. As stated by District Judge Johnson, speaking for the majority of the Circuit Court of Appeals of the Eighth Circuit, in Jacobs v. Commissioner, 34 F.(2d) 233, 235 (certiorari denied, 280 U. S. 603, 50 S. Ct. 85, 74 L. Ed. 647), as follows:

"Tax laws deal with actualities, and the rules prescribed by Congress are intended to produce practical results, when applied by untechnical men. We think actuality was the thought foremost in the mind of Congress when it put the phrase 'claims against the estate' in this and other Revenue Acts. The claims which Congress intended to be deducted were actual claims, not theoretical ones."

On September 16, 1925, decedent received an unsecured note from Ronald C. Kennedy in the principal sum of $1,000, due one year after date with interest at the rate of 7 per cent. per annum. On April 6, 1923, the date of the death of John A. Buck, nothing had been paid on this note. In the estate tax return the note was valued at $500. The Commissioner determined its value at $1,528.89, being the entire amount of principal and interest due April 6, 1923. This determination is presumptively correct. Nothing was paid to the estate upon the note until 1928, when it was paid in full. The executors maintain that the note was outlawed at the date of death, under the Code of Civil Procedure of the state of California; that the obligation was therefore not enforceable and that no value could be attached thereto for federal estate tax purposes; that anything thereafter paid upon it would be a voluntary contribution and would not affect the fair value at the date of death; that the good fortune of the estate in collecting the note five years after the testator's death and twelve years after the note matured, has no bearing on its fair value at the time of death. The contention that the note was valueless at the date of death is based entirely upon the assumption that the statute of limitations applies merely because of the date when due, and that nothing was paid upon the principal or on account of interest up to the time of the death of Mr. Buck. There is no other testimony in the record. This is not sufficient to overcome the presumption, raised by the decision of the Commissioner.

The note was not introduced in evidence. It cannot be said that the mere lapse of time of itself, and without any other testimony, necessitates the conclusive inference that the statute of limitations has run against the note. The statute may not have run on account of absence of the maker; there may have been an acknowledgment of the debt in writing such as would extend the time for payment. The evidence is silent on these points. The petition for review did not allege that the note was barred by the statute. Petitioners did not claim that it had no value, but placed the value of $500 on the note in filing their estate tax return. This is inconsistent with the argument now being made. The value as determined by the Board is approved.

The estate of John A. Buck, deceased, is the owner of the note of J. A. Freese in the principal sum of $2,000, dated November 5, 1915, due six months after date, bearing interest at the rate of 6 per cent. per annum. No part of the principal sum had been paid, although interest had been paid to April 1, 1923, a few days before Mr. Buck's death, and interest has been paid since. The estate tax return expressly stated that the note was barred by the statute of limitations and was of no value. The Commissioner appraised it at $2,000, and the Board of Tax Appeals upheld this appraisement. There is no showing how any of the payments were made. Payment by check accompanied by notice from the holder's agent as to the amount due, with other evidence may constitute sufficient acknowledgment of the debt to take it out of the statute. Searles v. Gonzalez, 191 Cal. 426, 216 P. 1003, 28 A. L. R. 78; Minific v. Rowley, 187 Cal. 481, 202 P. 673. The statute may have been tolled by absence from the state. The record is silent on any of these matters, and the petitioner failed to prove that the note was barred and was worthless. The burden was upon the petitioner to overcome the presumption that the finding of the Commissioner was correct. The value fixed by the Board of Tax Appeals is affirmed.

On April 1, 1922, Mrs. Buck advanced to her husband from her separate funds the sum of $95,000. The circumstances surrounding this transaction were as follows: Mr. Buck had become involved in a suit and he was required to pay a sum amounting to $325,000. Not having the full amount of cash with which to pay the debt, he contemplated the selling of certain securities to raise the money. Mrs. Buck remonstrated against the sale of the securities, stating to her husband that she had this money in the bank and that she would loan it to him. On her direct examination, in narrating the facts, she said:

"I had this money in the bank, and said to him, 'Why not take this money? I will lend it to you'. He hesitated, he thought he would sell some securities, but he said, 'All right, I will take that money'."

On cross-examination she further testified:

"Q. What did your husband do with this $95,000.00? A. He had a bill to meet, a very large one, and he wanted to sell securities, but I said, 'No, the money was in the bank, and I would lend it to him'.

"Q. He discussed this bill with you at the time? A. Yes, and he intended to pay it just shortly before he died.

"Q. To whom was this bill owning by Mr. Buck? A. This was a suit. It was a suit, and the bill was $325,000 and he had to meet that. He was lacking that amount of money, and I said I would give it to him. He would not hear of it at first, but I said, 'Oh, yes, do not sell any of the securities. It is there, you can have it.'"

In the opinion of the Board of Tax Appeals a part of the cross-examination is quoted, omitting that portion where the witness refers to this evidence as being a loan, and emphasizing the sentence where the witness said "he was lacking that amount of money, and, as I said, I would give it to him," upon which the Board bases its conclusion that the evidence does not warrant the finding that the money was loaned to decedent. It is conceded that the testimony shows that the $95,000 advanced by Mary Buck to her husband was from her separate estate.

In determining the matter, the Board of Tax Appeals said:

"Whether the payment of the $95,000.00 to her husband represented a gift or a loan to him is uncertain. * * * The evidence does not show that the widow had an enforceable claim against the estate for the $95,000.00 in question. The action of the respondent in disallowing the deduction is sustained."

■ In the argument to sustain the finding it is conceded that the testimony is clear that Mrs. Buck advanced the $95,000 from her separate estate to her husband, but that it is not clear from her testimony whether the advance was a gift or a loan, it being emphasized that in one place she told her husband that she would lend him the money, and that on cross-examination, as hereinbefore indicated, she used the expression "give," but obviously the witness did not intend to convey the meaning that this money was a gift to her husband, and to so hold is contrary to the testimony, and there is no evidence to support the Board's finding that this advance of her separate funds did not constitute a loan.

The opinion of the Board of Tax Appeals omits any reference to the law of California on this question under discussion. The Supreme Court of the state of California in the case of McKay v. McKay, 184 Cal. 742, 746, 195 P. 385, 386, says:

"It is the settled rule that the fact of the receipt by the husband of his wife's money presumptively makes him her debtor and imposes upon him the legal duty of returning it to her, and no affirmative proof is required on the part of the wife to show that the husband received the money as a loan, and not as a gift. To the contrary, the burden is upon the husband, or his heirs claiming the money, to show circumstances entitling him, or them, to retain the same. White v. Warren, 120 Cal. 322, 49 P. 129, 52 P. 723; Wormley's Estate, 137 Pa. 101, 20 A. 621; Stickney v. Stickney, 131 U. S. 227, 9 S. Ct. 677, 33 L. Ed. 136." See, also, Rose's U. S. Notes; In re Carpenter (D. C.) 179 F. 743, 747.

Mary M. Buck had a legal enforceable claim for $95,000 against the estate upon her husband's death. The fact that she did not file a claim against the estate is immaterial as she was a beneficiary under the law taking an amount exceeding the amount of her claim. The action of the Board of Tax Appeals in disallowing the deduction claimed for this amount is reversed.

Decedent's estate was appraised at $2,084,868.87. There was little indebtedness existing against it. The probate court allowed the widow a family allowance of $7,500 a month, which was paid to her for one year. At the expiration of that time upon the voluntary application of the widow the amount of family allowance was reduced to $3,750 a month for ten months. The total amount paid by the estate for family allowance pursuant to court orders during the twenty-two months of administration was $127,500. The respondent, the Commissioner of Internal Revenue, allowed a deduction of $52,500. Upon the evidence submitted the Board of Tax Appeals increased this amount, and determined the amount deductible from the gross estate, as allowance for support of the widow for the twenty-two months' period, to be the total sum of $82,500, which was at the rate of $3,750 per month.

The only question for this court to review is whether the Board's determination that $3,750 per month constituted the amount reasonably required for the widow's maintenance is supported by any substantial evidence.

The fact that the probate court made an allowance of a larger sum was not binding on the Board of Tax Appeals. The Revenue Act of 1921 (42 Stat. 227, 279, § 403) permits deduction from the value of the gross estate for "such amounts reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent. * · ´ " The determination of the Board finds support in the testimony of Mrs. Buck, which was to the effect that, although she had originally been allowed by the probate court $7,500 per month, she did not use all of this allowance during the first twelve months, and that thereafter, she, herself, petitioned the court for an allowance of only $3,750 per month. As the finding of the Board is supported by substantial evidence, this court is concluded thereby, and its finding that the amount deductible from the gross estate for family allowance for twenty-two months at $82,500 is approved.

Causes remanded to the Board of Tax Appeals for further proceedings in accordance with this opinion.