## In re CARPENTER.

(District Court, D. South Carolina. June 1, 1910.)

1. HUSBAND AND WIFE (§ 49¾*)—TRANSACTIONS BETWEEN HUSBAND AND WIFE—GIFT—PRESUMPTION.

Where a wife on coming of age receipted to her husband for a sum of money which he held as her guardian, but he retained the money, a gift is not presumed unless the circumstances make it plain that it was so intended.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 259; Dec. Dig. § 49¾.*]

2. HUSBAND AND WIFE (§ 49¾*)—TRANSACTIONS BETWEEN HUSBAND AND WIFE—GIFT—EVIDENCE.

Evidence *held* insufficient to show that the parties intended a gift of a wife's money to her husband, when she receipted for the money, though he retained it in his possession.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 260; Dec. Dig. § 49¾.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. HUSBAND AND WIFE (§ 43*)—TRANSACTIONS BETWEEN HUSBAND AND WIFE —LOAN—EVIDENCE.**

To constitute the relation of debtor and creditor between husband and wife, where she receipted to him for money which he retained in his possession, there must be some evidence of a contract between the parties, and a note executed by the husband without the wife's knowledge, and which was never delivered to her, is not sufficient.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 226; Dec. Dig. § 43.*]

**4. HUSBAND AND WIFE (§ 113*)—SEPARATE PROPERTY OF WIFE—CONVEYANCES AND CONTRACTS TO CONVEY.**

Under the Constitution and laws of South Carolina, the real and personal property of a married woman, whether held by her at the time of her marriage or accruing to her thereafter by inheritance or otherwise, becomes her separate property, and she may dispose of it to the same extent as if she were unmarried; the husband having no marital rights such as existed at common law, but being under the same obligation as at common law to support and maintain the wife and family.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 394; Dec. Dig. § 113.*]

**5. BANKRUPTCY (§ 340*)—ADMINISTRATION OF ESTATE—REFEREE—HEARING.**

On a hearing before a referee in bankruptcy as to a claim of the bankrupt's wife against the estate, testimony of the wife that money for which she gave a receipt to the bankrupt was left with him in the confidence that he would take care of it for her, and that on many occasions thereafter when reference was made to it he told her that he was taking care of it, was competent.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

**6. TRUSTS (§ 44*)—EVIDENCE—SUFFICIENCY.**

Evidence *held* to show that money retained by a husband after his wife gave him a receipt therefor was held by him as a trustee, and that he is liable to account therefor.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. § 44.*]

**7. LIMITATION OF ACTIONS (§ 102*)—COMPUTATION OF PERIOD—RECOVERY OF TRUST FUND.**

A claim of a wife against the estate of her husband in bankruptcy for a fund which he held in trust for her was not barred by limitations, nor by her laches, where up to within three years he had been in prosperous financial circumstances, and there had been nothing to awaken her suspicions that her money was in danger, or that there was any breach of trust.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505; Dec. Dig. § 102;* Trusts, Cent. Dig. § 570.]

**8. BANKRUPTCY (§ 325*)—ADMINISTRATION OF ESTATE—ACCOUNTING.**

In an accounting between a bankrupt and his wife as a claimant against the estate, he is entitled to credit for property transferred to her to its value at the time of the transfer, and not its increased value at the time of the accounting.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 325.*]

**9. BANKRUPTCY (§ 314*)—ADMINISTRATION OF ESTATE—CLAIMS AGAINST ESTATE.**

Where a wife signed a receipt in full for $3,138 in connection with the sale of real estate of her parents, where the husband and another bid off at the sale a certain tract at $2,805, and the husband subsequently paid the other $500 for his interest in the bid and had the property conveyed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to his wife, her claim against the estate of her husband in bankruptcy for the amount of the receipt will not be allowed.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.*]

In the matter of the bankruptcy of W. C. Carpenter. Petition to review the order of the referee disallowing the claims of Mrs. Carrie J. Carpenter. Affirmed in part, and reversed in part.

Butler & Hall, for Mrs. Carpenter.
H. K. Osborne, for trustee.

BRAWLEY, District Judge. This is a petition for review of the order of the referee disallowing the claims of Mrs. Carrie J. Carpenter. Carpenter was adjudged a bankrupt upon involuntary petition filed January 31, 1908. He resisted the petition, after a trial by jury was adjudicated a bankrupt, and upon appeal (174 Fed. 603, 98 C. C. A. 449) the judgment below was affirmed, and the estate is being administered in due course.

The claims proved largely exceed the assets, and the question now before me is whether the claims of the bankrupt's wife are to be allowed as debts. While the cause was pending in the Court of Appeals, Carpenter became non compos mentis, and is now confined within an asylum. The claim of Mrs. Carpenter is for moneys belonging to her separate estate, alleged to have been received by her husband, and consists of several items, each of which will be considered in its order.

It appears that at the time of her marriage she was a minor, entitled to an interest in the estate of her father, then being administered in the probate court; that Carpenter was appointed her guardian; that on becoming of age, March 20, 1891, she receipted him as guardian for the sum of $1,775.85, and he was discharged; and that he retained in his hands the sum mentioned. The case turns upon whether this is to be considered as a gift to the husband, or as a loan to him, or whether he is to be treated as a trustee. At the time the money was received, and for many years thereafter, in fact until a very short time before the adjudication in bankruptcy, Carpenter was a successful business man, upright in character, and correct in all his relations. There is no testimony tending to show that the wife intended to give, or that the husband intended to receive, this money as a gift, and a gift is not presumed unless the circumstances make it plain that it was so intended. All of the circumstances here are against the presumption of a gift. The husband was a man of property, in a prosperous condition, and the testimony of Mrs. Carpenter is that her husband told her that he would take care of it for her. Carroll, who was a partner of Carpenter, testified that some years after the receipt of the money he had some talk with him about "Carrie's money," which he put in the store, putting in a duebill or a deposit slip, he is uncertain which, and that he afterwards took it out; that he did not know what disposition he made of it; and there was found in the store, after the commencement of the bankruptcy proceedings, a prom-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

issory note dated May 23, 1895, for $2,270.57, due one day after date, with interest at 7 per cent. from date, payable to Mrs. Carpenter, and signed by the husband. This note was never delivered to Mrs. Carpenter, and she had no knowledge of it. It is supposed, and it is probably true, that this note represented the amount of money which Carpenter had received as guardian, with interest, and was intended as a memorandum to show the amount due by him at the date of the note, and there is testimony of other witnesses that Carpenter had referred to "Carrie's money." All of this clearly shows that Carpenter did not regard this money as a gift. As it is clear that Mrs. Carpenter never saw the note just referred to, and that the same was never delivered to her, there is an utter absence of testimony tending to show that she intended it as a loan. To constitute the relation of debtor and creditor, there must be some evidence of a contract. Under the Constitution and laws of South Carolina, the real and personal property of a married woman, whether held by her at the time of her marriage, or accruing to her thereafter by inheritance or otherwise, becomes her separate property, and she has power to dispose of it to the same extent as if she were unmarried. The husband has no marital rights such as existed at common law; but there is the same obligation on him as at common law to provide for the support and maintenance of the wife and family.

It is not claimed that there was any express trust created by direct and positive words, and manifested by any instrument in writing; but that there is an obligation arising out of confidence reposed by the wife in the husband, superinduced as matter of equity upon the transaction by operation of law for the purpose of carrying out the presumed intention of the parties. Carpenter received this money as the regularly appointed guardian of his wife, and when she attained her majority, for the purpose of discharging the sureties on his guardianship bond, she receipted to him for the money; but he continued to hold it as a quasi trustee, unless it can be shown that in some way he held it in another capacity, and I am of opinion that he did not take it either as a gift or as a loan. Of course a gift cannot afterwards be converted into a debt. Carpenter's repeated reference to it as "Carrie's money" negatives the idea that it was his own, for if it had been given to him or loaned to him it would have become his own money. There can be no doubt that, if this money could be traced to an investment in any specific property, the wife's right to follow it and to establish her claim to it would be incontestable in the absence of any circumstances creating an estoppel; but there is no proof of any such investment. The wife's receipt to the husband on the termination of the guardianship was manifestly given only for the purpose of discharging the husband on the obligation of his bond to the probate court. Objection was made on the hearing to the testimony of the wife; but the referee has held, correctly, as I think, that the testimony was competent, and I need not refer to the reasons given for his conclusion. The substance of this testimony is that the money was left with the husband in the confidence that he would take care of it for her, and she says that on many occasions

thereafter, when reference was made to it, he told her that he was taking care of it. There is no testimony that he formally acknowledged that he held the money in trust; but it seems to me that by his acts he made himself a trustee sub modo, and that in equity he must be held liable as a trustee for the funds belonging to his wife's separate estate, and must account for the same, unless some superior equities supervene.

"If a husband receives the capital fund of his wife's separate property, there is no presumption that she intended to give or transfer it to him; but he is prima facie a trustee for her, and a gift from her to him will not be presumed without clear evidence." Perry on Trusts, § 666.

In Stickney v. Stickney, 131 U. S. 238, 9 Sup. Ct. 677, 33 L. Ed. 136, there was a suit by the widow of William Stickney against certain of his heirs to establish her claim as creditor for the sum of about $79,000 against the estate, real and personal, held in the name of her husband at the time of his death; her contention being that all of that estate was acquired by her husband with her moneys, received under the will of her deceased father, and which were delivered to him to invest for her benefit, but which, without her knowledge, and contrary to her directions, he used and invested in his own name. The married woman's act of the District of Columbia is similar to the law of South Carolina in giving to the wife absolute control of her separate estate. There was a contention in that case, as there is here, that there was a presumption, arising from her allowing her husband to use the moneys of her separate estate, that she intended them as a gift to him. In considering it, Mr. Justice Field says:

"Any presumption of that kind, if it would otherwise arise in the case, was entirely rebutted by her repeated and express directions to invest the moneys for her benefit in her own name; but we are of opinion that, in the absence of her testimony, there would be no presumption, since the passage of the married woman's act, that she intended to give to her husband the moneys she placed in his hands, any more than a gift would be inferred from a third person who in like manner deposited money with him. If there be no proof of indebtedness to the party receiving the moneys, the presumption would naturally be that they were placed with him to be held subject to the order of the other party or to be invested for the latter's benefit. We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him."

The opinion cites with approval from a decision of the Supreme Court of Pennsylvania (Grabill v. Moyer, 45 Pa. 530, 533), as follows:

"After it has been shown, as it was in this case, that the property accrued to the wife by descent from her father's and brother's estates, the presumption necessarily is that it continued hers. In such a case it lies upon one who asserts it to be the property of the husband to prove a transmission of the title, either by gift or contract for value; but the law does not transmit it without the act of the parties. If mere possession were a sufficient evidence of the gift, the act of 1848 (similar to our married woman's act) would be useless to the wife. Nothing is more easy than for the husband to obtain possession even against the consent of the wife, and where he obtains it with her consent, it can be at most but slight evidence of a gift."

The opinion also cites the case of Bergey's Appeal, 60 Pa. St. 408, 100 Am. Dec. 578, another Pennsylvania case, where Bergey received money belonging to his wife, for her patrimonial portion, in her presence, and both united in the receipt for it.

"Not a word was spoken by the wife when her husband took up the money to count it, and put it in his pocket; nor was there a word ever heard afterwards to the effect that the wife had made a gift of it. The husband appropriated it to the purchase of a farm, and the Supreme Court of the state held that no inference could arise of a gift in the transaction as detailed, observing that she was not bound to attempt a rescue of it from him or proclaim that it was not a gift. She might rest on the idea that his receipt in her presence was with the intent to take care of it for her."

And again:

"If it was not a gift the husband was a trustee for his wife, and, whether he kept the money in his pocket or put it into real estate which he had purchased, honesty required that he should account to her for it. He could be compelled to do so in equity."

Upon the authority of this case I must hold that Carpenter was liable to account for this money as trustee of his wife.

There is nothing in the case of McLure v. Lancaster, 24 S. C. 273, 58 Am. Rep. 259, relied on by counsel for creditors, which is in conflict with this view. That was an appeal founded upon alleged errors in the charge of the circuit judge, where, after the death of the husband, an action was brought by the widow against his executors to recover rents and profits of land accrued during the time the husband had been in possession. The circuit judge left it to the jury to determine whether a gift to the husband could be inferred from the fact of long acquiescence by the wife in the management and control of her lands, and the appropriation of the income therefrom to his own use, without objection by her; the verdict of the jury being against the wife.

I have carefully examined all the other cases cited by the counsel for the creditors, and find nothing therein to change the views already expressed. Every case of this nature must be determined by the facts peculiar to it, and upon general principles. This principle is stated by Perry on Trusts, § 206, as follows:

"Whenever one person is placed in a relation to another by the act or consent of that other, or the act of a third person or of the law, so that he becomes interested for him or with him in any subject of property or business, he will in equity be prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has been associated."

It remains only to consider the further contention of the counsel for creditors that this claim is barred by the statute of limitations, or by laches. The money was received by Carpenter as the statutory guardian of the wife, at a time when she was little more than a child; and when she attained her majority, being little versed in business, it was but natural that she should leave the money in his hands, in the trust and confidence that he would take care of it for her, and she testifies that he promised to do so, and repeatedly informed her that he was taking care of it. He was an honorable man, in prosperous circumstances financially, and up to 1907, when his financial troubles,

arising mainly out of unfortunate speculations in cotton, began, there was nothing to awaken her suspicions that her money was in danger. There is nothing in the testimony or in the circumstances tending to show that this confidence was unreasonable, or calculated to awaken any suspicion that there was any breach of trust. She had no knowledge of the transaction referred to by Carroll of Carpenter's putting the money in the store and of his taking it out, or of the execution of the note, which was never delivered to her, and found among his papers after the bankruptcy. There was no assertion of any adverse claim on the part of Carpenter, or of any claim on his part inconsistent with the relation of trust and confidence which she had reposed in him at the beginning, and nothing to put upon her the duty of making a demand for the money. I must conclude, therefore, that her claim is not barred by the statute of limitations, or by her laches.

A case might arise where a wife, intrusting her property to her husband, upon the supposed ownership of which standing in his name he might obtain credit that otherwise might not have been given him, would be estopped from setting up her claim as against creditors; but there is no proof of such facts here, and no circumstances to create such estoppel.

The next item in Mrs. Carpenter's claim arises out of the transaction in the court in Cherokee county in August, 1901, in connection with the sale of the real estate of her parents, where she signed a receipt in full for $3,138, which she now claims against the bankrupt estate of her husband. This claim cannot be allowed. There is no proof that Carpenter received this money. The transaction seems to be as follows: Carpenter and Cudd bid off at this sale the "home place" at $2,805. Carpenter subsequently paid Cudd $500 for his interest in the bid, but took no conveyance of the same in his own name, and by his direction the clerk of the court who made the sale conveyed the "home place" to Mrs. Carpenter. All of this was done apparently without Mrs. Carpenter's knowledge. The creditors now claim, and have offered testimony to show, that this place is worth $8,000, and that, in the event that it is decided that Mrs. Carpenter has a subsisting claim against the bankrupt estate, Carpenter should be credited with $8,000. This contention cannot be sustained. In any accounting Carpenter would be entitled to credit for the value of the property at the time the transfer was made, which was in the year 1901, and not its present value. Ordinarily, what property brings at a public sale is regarded as a test of its value; but there may be circumstances which show that a bid at a public sale does not represent a fair value of the property, and some such circumstances appear here, for it seems that Carpenter paid to his associate administrator, Cudd, $500 for his share of the bid, and, assuming that his own share was of equal value, it would appear that the value of the "home place" was $1,000 more than the bid of $2,805. Inasmuch as this item of Mrs. Carpenter's claim is based upon the supposed receipt by Carpenter of the sum above mentioned, and it appears that he did not receive the money, but by arrangement with the clerk of the court transferred his bid to his wife, who received the conveyance of

the lands in question, that fully discharged all obligation with respect thereto, and this claim is disallowed.

There are sundry other items in the claim presented by Mrs. Carpenter, including among them some claims arising out of her interest in her brother's estate, and there is proof of conveyances of certain property by Carpenter to his wife. The referee has disallowed them, and it has not been made clear to me that Carpenter has received any actual moneys in these transactions for which he is liable to an account beyond the conveyances mentioned.

I am therefore of opinion that the referee's report should be, and it hereby is, affirmed, except as to the item of $1,775.85, received by Carpenter March 20, 1891, and it is adjudged that Mrs. Carrie J. Carpenter is a creditor for said amount, with interest thereon, and entitled to share pari passu with other creditors in the bankrupt estate.