In re REMMERDE.

(District Court, N. D. Iowa, W. D. August 18, 1913.)

No. 1,044.

1. HUSBAND AND WIFE (§ 131*)—SEPARATE PROPERTY—GIFT.

Though a husband's possession of his wife's separate property be with her consent, and even though there be no express agreement to repay it, there is no presumption of gift by her to him, but in the absence of proof of transmission of title to him by gift or contract he is bound to repay it; the husband's common-law rights in his wife's property being abrogated.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 426, 471–483; Dec. Dig. § 131.*]

2. HUSBAND AND WIFE (§ 133*)—OWNERSHIP OF PROPERTY—GIFT TO WIFE—EVIDENCE.

Evidence, on contest of the claim of bankrupt's wife against his estate, *held* to show that a gift by her father was to her alone, and not to her and her husband.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 487–494; Dec. Dig. § 133.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** HUSBAND AND WIFE (§ 144*)—USE OF SEPARATE PROPERTY—LIABILITY OF HUSBAND FOR INTEREST.

Under the rule obtaining in Iowa, a husband using, with his wife's permission, her separate estate, is not chargeable with interest, in the absence of express agreement or a course of dealing between them such as to raise an implied agreement to pay interest.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 35, 545–553; Dec. Dig. § 144.*]

**4.** LIMITATION OF ACTIONS (§ 145*)—NEW PROMISE—NOTE.

Even though the claim of a wife against her husband on account of her separate property, which she has permitted him to use, be barred by limitations, his subsequent execution of a note to her therefor is a revival of it under Code Iowa 1897, § 3456, declaring a barred cause of action on contract to be revived by a new promise in writing, signed by the party to be charged, to pay the debt.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 584–588, 590–592; Dec. Dig. § 145.*]

**5.** BANKRUPTCY (§ 314*)—CLAIM OF WIFE—LACHES.

The claim of bankrupt's wife against his estate should not be disallowed for her alleged laches in not sooner enforcing her demand against him.

[Ed. Note.—For other cases. see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

Submitted on petition of Johanna Remmerde, wife of the bankrupt, for review of an order of the Referee reducing the amount of her claim against the bankrupt estate; and the petition of the trustee and certain creditors of the bankrupt for review of the order allowing said claim in any amount. Order vacated, with directions.

See, also, 206 Fed. 822.

T. E. Diamond, of Sheldon, Iowa, for petitioner.

C. A. Babcock, of Sheldon, Iowa, for trustee.

G. A. Gibson, of Sheldon, Iowa, for other creditors.

REED, District Judge. John W. Remmerde, of Sheldon, O'Brien county, was adjudged bankrupt by this court October 7, 1912, upon his own petition filed October 5th preceding. October 19th following, the petitioner, Johanna Remmerde, his wife, filed proof of a claim against his estate based upon his promissory note for $7,032, made to her April 13, 1912, and due on the 15th of said month, bearing 6 per cent. interest. The trustee and certain of the creditors objected to the allowance of such claim in any sum upon the grounds, in substance, that the note upon which it is based is without consideration, and was made for the purpose of defrauding the creditors of the bankrupt; or if there was any consideration for the note such consideration was barred by the statute of limitations before it was made, and the petitioner estopped by her laches from now proving the claim.

Upon the hearing the referee reduced the amount of the claim to $2,000, and allowed it in that sum with interest from the date of allowance as an unsecured claim against the estate. The petitioner, Mrs. Remmerde, complains of the order of the referee in reducing

the amount of her claim to $2,000; and the trustee and other creditors complain of the order in allowing it in any sum whatever.

The note is presumptively valid, and the burden is upon the trustee and objecting creditors to establish their objections to its allowance.

The proofs as to the consideration of the note show without any dispute the following facts: Mrs. Remmerde is one of six children (four daughters and two sons) of Mr. G. H. Schoep, a well to do farmer of Sioux county in this state. She was married to the bankrupt in March, 1899, and it seems was the last of the children to marry. About that time her father, Mr. Schoep, arranged to give each of his six children $4,000 in lands and other property, and made to Mrs. Remmerde a contract (the terms of which are not definitely shown) for a quarter section of land in Sioux county, and gave to each of his other children a like amount of property, or had given it to them prior to such time. The quarter section so intended for Mrs. Remmerde had been rented to the bankrupt for that year (1899), and its value including such rent was about $45 per acre. In December, 1901, the father made a deed of the land to the bankrupt (in which the consideration was stated as $7,200), who was to pay the father the difference between the $4,000 and the value of the land at $45 an acre, including the rent before mentioned. About the same time the bankrupt borrowed from an insurance company $3,200, which he secured by mortgage upon the land so deeded to him, in which mortgage the petitioner joined, and paid the father what he was owing him for the land above the $4,000 that Mrs. Remmerde, by the gift of her father, had therein. Later the bankrupt sold the land, the petitioner joining in the deal, and invested the proceeds in other property, and such other property or what was left of the proceeds thereof he owned at the time of his bankruptcy. On August 1, 1899, the children of Mr. Schoep signed and delivered to him a writing that reads in this way:

"We the undersigned hereby agree to pay on demand to G. H. Schoep or his wife Mrs. G. H. Schoep the sum of one hundred dollars ($100.00) payable annually whenever so desired by said party or parties; as an annual rental for a ($4,000) four thousand dollars gift given to each of the signing parties out of love and affection.

"Signed this first day of August, 1899.

> "P. L. Schoep.
> "N. Wassenaar.
> "John G. Schoep.
> "J. W. Remmerde.
> "Johanna Remmerde.
> "B. Rozenboom.
> "E. Franken."

P. L. Schoep and John G. Schoep whose names are signed to the papers are sons of G. H. Schoep, the father of Mrs. Remmerde. N. Wassenaar, J. W. Remmerde, the bankrupt, B. Rozenboom, and E. Franken are sons-in-law, and Johanna Remmerde is the petitioner. Who prepared or wrote this paper does not appear. Mr. Schoep (the father) thought it was written by his son-in-law N. Wassenaar, but Mr. Wassenaar says he did not write it, but knew of it and signed it. Mr. Schoep, the father, is a Hollander, and understands and

speaks the English language with difficulty. He testified before the referee in this case through an interpreter, and at the time of so testifying was 74 years old. The petitioner, Mrs. Remmerde, is about 43 years old, was born in Holland, came to this country when 11 years old, attended the English schools but little thereafter, and speaks and understands the English language with difficulty, though she testified without the aid of an interpreter.

At the time the father of Mrs. Remmerde deeded the land to her husband, there was no written promise or agreement that the latter should pay to her the $4,000 so given to her by the father; but she and the bankrupt both testify that he promised verbally to pay the same to her whenever she wanted it; and he has had the use of such $4,000 ever since. They also say that she asked him a number of times to repay the amount to her, but it was never convenient for him to do so, and that he has never paid the same or any part thereof to her. In April, 1912, after the bankrupt had become somewhat embarrassed financially, she insisted that he give her security for the $4,000. They then went to an attorney, and the note of $7,032, which is the basis of the petitioner's claim, was made by the bankrupt to her as the amount of said $4,000, with interest thereon at 6 per cent. per annum to that time. A chattel mortgage was made on his stock of furniture (he was then, and at the time of his bankruptcy, engaged in the furniture business) to secure the same, which was placed of record. This caused the bankrupt's other creditors (so he says) "to jump him," and he induced his wife to discharge the mortgage of record; but she retained the note, and upon his bankruptcy presented it as an unsecured claim against his estate. Mrs. Remmerde is ignorant of business affairs, and relied wholly upon her husband to protect her against loss of the amount given to her by her father. The foregoing is a brief summary of the ultimate facts established by the testimony.

[1] It is the contention of the trustee and objecting creditors that, if the $4,000 claimed by Mrs. Remmerde was a gift of her father to her of that amount, she, by allowing her husband to take the title to the land in his own name and use and dispose of the same, thereby gave the $4,000 to him, and that she is now estopped from claiming that the bankrupt owes her this amount. There is no evidence in the record of any gift by Mrs. Remmerde to the bankrupt of the $4,000 which the proofs show beyond dispute the father gave to her; and her permission that her husband should take the title to the land and use and dispose of the same, and invest the proceeds in other property, is entirely consistent with her claim that the bankrupt promised to repay her the $4,000 whenever she wanted it. To constitute a valid gift of property to another there must be a clear and unequivocal intention upon the part of the donor to forever part with his title to the property, accompanied by some act upon his part that vests the title in the donee. Snavely v. Henerson (C. C. A.) 204 Fed. 978. There is an entire absence of any evidence of such an intention upon the part of Mrs. Remmerde to divest herself of the title and right to the $4,000 so given to her by her father. On the contrary, she testified positively that she did not give the $4,000 to her husband, but

left it with him in the land upon his promise to repay it to her whenever she wanted it. The husband says the same.

Section 3153 of the Code of Iowa (1897) provides:

"A married woman may own in her own right real and personal property, acquired by descent, gift or purchase, and manage, sell and convey the same, and dispose thereof by will, to the same extent and in the same manner the husband can property belonging to him."

In the absence of an agreement of the bankrupt to repay to the wife this $4,000, the presumption would be that when he received the separate property of his wife, with or without her consent, he must be deemed to hold it for her benefit, in the absence of direct evidence that she intended it as a gift to him. Stickney v. Stickney, 131 U. S. 227, 9 Sup. Ct. 677, 33 L. Ed. 136. In that case the husband had received possession of the property of his wife, real and personal, coming to her from her father's estate, which he had used and invested in his own name. It was contended that in permitting him to do so she intended a gift to him. Mr. Justice Field, speaking for the court of such contention, said:

"Any presumption of that kind, if it would otherwise arise in the case, was entirely rebutted by her repeated and express directions to invest the moneys for her benefit in her own name. But we are of opinion that, in the absence of her testimony, there would be no presumption, since the passage of the Married Woman's Act, that she intended to give to her husband the moneys she placed in his hands, any more than a gift would be inferred from a third person who in like manner deposited money with him. If there be no proof of indebtedness to the party receiving the moneys, the presumption would naturally be that they were placed with him to be held subject to the order of the other party, or to be invested for the latter's benefit. We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him."

Quoting approvingly from Grabill v. Moyer, 45 Pa. 530, 533, he continues:

"After it has been shown, as it was in this case, that the property accrued to the wife by descent from her father's and brother's estates, the presumption necessarily is that it continued hers. In such a case, it lies upon one who asserts it to be the property of the husband to prove a transmission of the title, either by gift or contract for value, for the law does not transmit it without the act of the parties. If mere possession were sufficient evidence of a gift, the act of 1848 would be useless to the wife. Nothing is more easy than for the husband to obtain possession, even against the consent of the wife. And where he obtains it with her consent, it can be at most but slight evidence of a gift."

See, also, Garner v. Second National Bank, 151 U. S. 420–423, 14 Sup. Ct. 390, 38 L. Ed. 218; Clark, Assignee, v. Hezekiah (D. C.) 24 Fed. 663; In re Neiman (D. C.) 109 Fed. 113; In re Carpenter (D. C.) 179 Fed. 743, 744; Logan v. Hall, 19 Iowa, 491–493; Meyer v. Houck, 85 Iowa, 319, 52 N. W. 235; City Bank v. Wright, 68 Iowa, 132, 26 N. W. 35; Payne v. Wilson, 76 Iowa, 377, 41 N. W. 45; Roberts v. Brothers, 119 Iowa, 309, 93 N. W. 289.

In the absence of an express agreement, therefore, on the part of Mr. Remmerde, that he would repay to Mrs. Remmerde the $4,000

received by him from her father, he will, in those jurisdictions where the common-law rule as to the right of the husband to the separate property of the wife is abrogated, as it is in Iowa, be required to do so.

[2] It is also the contention of the trustee and objecting creditors that the $4,000 claimed by Mrs. Remmerde as having been received from her father was the joint gift of her father to her and her husband; that such is the effect of the writing of August 1, 1899; and that she is therefore only entitled at best to prove her claim for one-half the $4,000 against the bankrupt estate. This is the view taken by the referee of the matter, for in his certificate he says:

"Upon the evidence submitted upon this claim, and upon hearing counsel thereon, I find that an interest in real estate and furniture amounting to approximately four thousand dollars ($4,000.00) was given jointly to Johanna Remmerde, claimant herein, and her husband, John W. Remmerde, bankrupt herein, by way of a credit upon the purchase price of a quarter section of land in Sioux county, Iowa (describing it); in consideration of which credit bankrupt and wife became obligated to pay interest in the sum of $100.00 per annum on demand to G. H. Schoep or Mrs. G. H. Schoep, the parents of claimant herein, in August, 1899.

"I further find that there was no agreement between claimant and bankrupt that the husband (bankrupt herein) should pay the wife (claimant herein) interest for the use of her share of the property given them by claimant's father, or that the facts and circumstances of the case warrant an implication of an agreement to pay interest."

The finding of the referee that the gift by the father of Mrs. Remmerde was a joint one to her and her husband is entirely without support in the evidence.

Mr. Schoep, the father of Mrs. Remmerde, testified as follows:

Q. I will ask you as to whether you ever turned over any property, any money, or anything of value, to your daughter, Mrs. Johanna Remmerde? A. Yes.

Q. And about when was that as best as you can recollect? A. I think it is like the paper says there (referring to the writing of August 1, 1899) at the same time.

Q. I will ask you how much that was that you turned over to your daughter, at that time? A. $4,000.

Q. I will ask you to tell the court how and in what manner you turned over this $4,000 to your daughter? A. In land, houses, and furniture.

Q. Now, was this $4,000 given by you to your daughter, you say in land transferred wherein you transferred land by you to her? A. It was a land contract.

Q. When the contract ripened into a deed, to whom was the deed made out to for this particular land, to Mr. Remmerde, or to Mrs. Remmerde? A. I don't remember.

Q. If the deed shows that the land was conveyed to J. W. Remmerde, then you would say that the recitals in the deed are correct? A. I believe it was, I can't remember very much about it. I know the contract for the land was made out in my daughter's name. * * *

Q. And I will ask you whether you gave this $4,000 to Mrs. Remmerde because she was your daughter? A. Of course, I shouldn't have given it to Remmerde.

Q. Do you mean by Remmerde, Mr. Remmerde or Mrs. Remmerde, when you say 'to Remmerde'? A. Not to Mr. Remmerde, but to Mrs. Remmerde.

Q. What did you give—did you give it to her as a sort of a marriage por-

tion, or a sort of a dower? A. No, I gave it to all my children, not as a marriage portion, but I gave it to all my children. * * *

Q. Did you give Mr. Remmerde $4,000 too, or just to your daughter? A. To my daughter. * * *

Q. Explain to the court how it happens that Mr. Remmerde signed this paper, as well as Johanna Remmerde, your daughter. A. The reason why is because they were just about a year married, and I seen that he was not a very good financier, or rather a spendthrift, and for that reason I had them both sign that paper.

Q. Now, what was the object of J. W. Remmerde signing that paper, why did he sign that paper? What was he to be bound to by his signing it? A. The reason was so that he would be obligated to me to pay the $100 in case I demanded it. * * *

### N. Wassenaar testified:

Q. Are you a married man? A. Yes.

Q. What relation is your wife to G. H. Schoep? A. His daughter.

Q. How long have you been married? A. Going on 17 years.

Q. Have you ever seen this document before? (The writing of August 1, 1899, shown the witness.) A. Yes.

Q. About how long ago did you first see it? A. About the time of its date, I think that is right. * * *

Q. I will ask you how it happened—relate the entire transaction to the court, * * * how it happened that you signed your name to that document, and for what purpose? A. Well, the old gentleman was dividing an equal amount among his children, that he was intending to give his children each an equal division of some of his property, and in case that he should ever need support from outside of what he had owned, that we was to give him $100 a year, that was the understanding, so that in case he should never have to suffer, or never have to go back.

Q. You said he was to give his children an equal division of certain portion of his property; how much was he to give each of the children? A. $4,000.

Q. As a matter of fact, do you know of your personal knowledge that he did give this much property, of your personal knowledge? A. My wife—that is the only one I have personal knowledge of. But the others, of course, I understand that he did give it. I do not say that he handed it over to them.

Q. Did he give you yourself $4,000, or to your wife, or both or each of you? A. He gave it to my wife; so far as that is concerned, we started in business with it.

Q. Have you any knowledge of G. H. Schoep ever giving any $4,000 or other property to his daughter Johanna Remmerde? A. Well, as far as I am personally concerned, as I have said before, I have not seen the money, but there is no question but what they all received an equal amount, and Mrs. Remmerde as well. The equal amount was $4,000.

Q. Did you and Mr. Schoep ever have any conversation on this matter of him giving his daughters $4,000? A. Yes, more than once—talked of it different times.

Q. Did you ever have a conversation of like kind with Mr. J. W. Remmerde, the husband of Johanna? A. Yes.

Q. What did Mr. Remmerde say to you in those conversations? A. Oh, we talked at different times, you know, and especially in the last few years when his finances didn't seem to work as good as they did, and I talked with him in regard to his finances, and he made the statement, more than once, that he could pay Johanna her money any time she wanted it—there was plenty for it.

Q. Was anything ever said at any time about interest on this money, during the conversations that you have had, that you can remember of? A. Well, I wouldn't say that; no.

Q. Was ever during any of those conversations anything said that he was to pay interest? A. No.

### Cross-Examination.

By Mr. Babcock:

Q. Mr. Wassenaar, you will notice that this paper reads that $100 is to be given "as an annual rental for $4,000.00 gift to each of the signing parties out of love and affection." And now the signing parties are P. L. Schoep, yourself, John G. Schoep, J. W. Remmerde, Johanna Remmerde, B. Rozenboom, and E. Franken. The contract says that the gift was to them. What do you say as to that question? A. Well, that might—I don't think that the contract was exactly adhered to at the time so precisely—the contract was signed in good faith with the old gentleman.

Q. I suppose when you signed it was explained to you that this $100, as— or didn't you read it carefully? A. Why we were perfectly willing to do that, in good faith. As I understand, when it comes right down to the letter, it probably ought to be a little different; of course, that paper was not drawn by an attorney and signed, or presented by an attorney.

Q. How was this money paid to your wife? A. We got an interest in a store, a general store, to the extent of $4,000, less the furniture which was given to us at the time of our marriage. That is, the furniture was counted out as a part of the $4,000.

Q. And except as to the amount of the payment of the $4,000 to your wife, you personally know nothing as to how or when the others got it? A. That I saw the transaction handed over, no.

Q. Did you get the $4,000 you spoke of before this paper was signed, or afterwards? A. It might have been a little before; it might be about the same time; I wouldn't say definitely, because we were invoicing at that time.

Q. So you don't know why Remmerde signed the paper, and the husband of none of the other girls signed it? A. Yes, I think I do.

Q. No, I don't mean that, just strike that, I meant that partly and partly this: Johanna Remmerde is the only one of the girls that signed this paper— only one of the children of the girls that signed the paper? A. Yes.

Q. If this $4,000 was given to the children, and the children only, do you know why the other children who weren't girls didn't sign the paper? A. As I stated before, Mr. G. H. Schoep was satisfied with our signatures on that paper, and didn't require the signature of the girls.

By Mr. Diamond:

Q. You say the only person that signed as husband and wife was Mr. Remmerde and Mrs. Remmerde; explain how it happened that in that case it was both the child and the husband that signed the paper, and that was not true in any other case. A. Why he said to me for the reason that Mr. G. H. Schoep was not satisfied with his signature at all, and I remember of his saying definitely, as far as that is concerned, that he wouldn't give it to Will—J. W. Remmerde.

Q. He wouldn't give what? A. He wouldn't give that $4,000 to J. W., but would give it to her.

Q. And no doubt, to be sure of the $100, he wasn't satisfied with J. W. Remmerde's signature alone, but also wanted his own child to sign it? A. I think that was it.

Q. A while ago you said, when Mr. Babcock was examining you, that the contract was not being precisely adhered to. Explain to the court exactly what you mean. A. Well, that we didn't exactly understand the contract probably, when we signed, that it would be just exactly the way who were to receive, who were the ones that received that money.

Q. What was the actual fact? Who did receive the money? A. Why, the children themselves, not the sons-in-law, or the daughters-in-law."

There can be no doubt under all the testimony that it was to Mrs. Remmerde alone that the father gave the $4,000; an amount only equal to that which he gave to each of his other sons and daughters. Nor is the writing of August 1, 1899, inconsistent with this view of the testimony. That writing does not recite a present gift of $4,000 to each of the signing parties, but only that the father, Mr. Schoep,

has given to each of them $4,000 out of love and affection, and for which they agree to pay to him or his wife annually $100. Literally the writing speaks of a gift of $4,000 to *each* of the signing' parties, and that they jointly are to pay $100 to the father or his wife on demand. So construed it would appear that Mr. Remmerde as well as his wife had been given $4,000, and that the signers together were to pay only $100 to the old people. Obviously the writing does not accurately express to whom the father had given .$4,000, nor what each was to pay to him or his wife. The reason that Mrs. Remmerde signed the paper may be, as Mr. Wassenaar says, that the father was not satisfied with the signature alone of the bankrupt, and wanted the signature of his daughter to the payment of the $100 she and her husband were to pay; or it may be that inasmuch as the bankrupt was to pay for the land $3,200 above the $4,000, that he gave to his daughter, had something to do with the signature of both Mrs. Remmerde and her husband. However this may be, there is no dispute under the testimony that Mrs. Remmerde by the gift of her father received an interest equal to $4,000 in the land deeded to the bankrupt.

The conclusion therefore is that the referee erred in finding that the gift was one of $4,000.by the father to Mrs. Remmerde and her husband jointly.

[3] As to the obligation of the husband to pay interest for the use of the wife's money or property, the equitable rule, which obtains in Iowa, is thus stated in Logan v. Hall, 19 Iowa, 491, 500:

"'Whenever the wife has a separate estate (including money) which she permits her husband to use, and there be no stipulation that interest shall be paid by him for the use of it, the law will presume, in the absence of any circumstances showing a contrary intention or understanding, that the husband should not account for or pay interest on the funds; but if, from the mode of dealing, there be any circumstances from which it may reasonably be inferred that the ·intention of the parties was to charge interest, then the husband is rightfully and properly chargeable therewith,' as where he borrowed his wife's· moneys and lent them to a mercantile firm of which he was a member."

The testimony fails to show an express agreement or promise upon the part of the bankrupt to pay interest upon this $4,000 to his wife prior to the making of the note of April 12th to her therefor. It is true that Mrs. Remmerde says in substance that she was to have interest on the $4,000 from her husband, and he says substantially the· same. But these are rather the statements of their conclusions respectively of what she was to receive, rather than of an express agreement or promise by the bankrupt to pay interest for the use of the money. The referee found as a fact that there was no such agreement prior to the making of the note, and that the course of dealing between Mrs. Remmerde and the bankrupt was not such as to raise an implied agreement to pay interest, and that none should therefore be allowed. The evidence is not such as to warrant interfering with this finding; in fact, it has some support in the testimony of Mr. Wassenaar. Interest should not, therefore, be allowed upon the claim prior to the note of April 12, 1912. To do so would be inequitable to the other creditors.

[4, 5] The objecting creditors further contend that the claim of Mrs. Remmerde was barred by the statute of limitations, and by her laches, before the note was made. This contention cannot be upheld. The Code of Iowa (1897) § 3456, provides:

"Causes of action founded on contract (barred by section 3457) are revived by an admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same."

Conceding without deciding that the claim of Mrs. Remmerde was barred by the statute of limitations prior to the making of the note, that note was a revival of the debt. As to the laches of Mrs. Remmerde in not sooner enforcing her demands against her husband and in permitting him to use the money as he did, it is sufficient to say that it is commonly known that husband and wife do not ordinarily deal with each other as strangers do. See City Bank v. Wright, 68 Iowa, 132, 26 N. W. 35; and Robert v. Brothers, 119 Iowa, 309, 93 N. W. 289, above. The claim should not therefore be disallowed because of the alleged laches of Mrs. Remmerde.

The order of the referee reducing the amount of Mrs. Remmerde's claim to $2,000 is set aside and vacated, and the matter referred back to him with directions to allow such claim in the sum of $4,000, with 6 per cent. interest thereon from the date of the note, viz., April 12, 1912, to the filing of the petition in bankruptcy. The trustee and objecting creditors will pay the costs incurred in the matter of this claim.

It is ordered accordingly.