RICHARD L. McCANN, ADMINISTRATOR DE BONIS NON WITH WILL ANNEXED OF THE ESTATE OF LUCY C. SHARTLE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49312. Promulgated March 20, 1934.

*Laurence Graves, Esq.*, and *Alfred G. Allen, Esq.*, for the petitioner.

*Ralph F. Staubly, Esq.*, for the respondent.

OPINION.

SEAWELL: Consideration of the evidence offered in this proceeding at the hearing had in 1932 developed some doubt as to whether the check for $1,070,086.11 had been transferred by the decedent to her husband by way of gift or otherwise in any manner sufficient to transfer title thereto to the husband. Memorandum briefs submitted by the parties in respect thereof, pursuant to a request of the Division, disclose a difference of opinion as to the issue involving the item. The petitioner maintains that the issue is not whether the check was transferred in contemplation of death, involving two points—transfer, and cause of transfer—but only whether contemplation of death, within the meaning of the statute, is present. In other words, the petitioner says that the pleadings remove the question of transfer, leaving for decision only whether it was made in contemplation of death. The respondent's position is that the issue is not limited to the reasons assigned in his deficiency notice for including the property in the gross estate and, accordingly, we should sustain his action if we find that no completed gift *inter vivos* was made by the

decedent, or if for any other reason the amount belongs in the gross estate.

The proceeds of the check were not included in the estate tax return as taxable income, on the ground, as stated by Charles W. Shartle, the executor, that the alleged transfer was made to terminate a trust. In a 30-day letter issued September 16, 1929, the respondent informed the executor that he had tentatively determined to include the amount of the check in the gross estate on the theory that " such transfers are taxable under Section 302 (c) of the Revenue Act of 1926." In the deficiency notice it is set forth that " the evidence in the record does not warrant any changes in the tentative findings as set forth in Bureau letter of September 16, 1929." From this notice there was filed with this Board a petition in which the petitioner alleged that the determination was based upon certain errors, including the following:

(c) A determination by the respondent that the following items should be included in the decedent's gross estate as transfers made by the decedent within two years prior to her death and taxable under Section 302 (c) of the Revenue Act of 1926.

This allegation of error is followed by a list of items, including the check for $1,070,086.11, and dividends, aggregating $108,000, paid in 1925 and 1926 on the decedent's stock of the Machine Co. In his answer the respondent denied the errors alleged and admitted the allegation of fact that he had " determined that said $1,070,086.11 was property of the decedent and that the delivery thereof to said Charles W. Shartle constituted a transfer within the meaning of Section 302 (c) of the Revenue Act of 1926."

Without amendment of the pleadings the proceeding came to trial. The petitioner introduced evidence in an effort to prove that the decedent received the check in payment of stock as trustee for her husband and that death was not contemplated at the time when she endorsed it. On November 27, 1933, pursuant to an order therefor, a further hearing was had, limited, however, to the introduction of evidence on the question of whether the check had been transferred to the husband by gift or otherwise.

Generally parties to proceedings before this Board may narrow the issues, *John I. Chipley*, 25 B.T.A. 1103, and in a proper case the Board will confine its decision to the questions so raised. Here the respondent's answer admits only his method of determination and he has not otherwise agreed upon a limitation of the issue. Under the circumstances, we do not think the issue is as narrow as that claimed by the petitioner, but is whether the proceeds of the check constitute a part of the gross estate. Cf. *Edgar M. Carnrick*, 21

B.T.A. 12; *Alexander Sprunt & Son, Inc.*, 24 B.T.A. 599; *James W. Pennock, Jr.*, 25 B.T.A. 1331; and *James P. Gossett*, 22 B.T.A. 1279, in which we said:

\* \* \* The Board has consistently held that the subject matter of the proceeding before it is the tax liability of the petitioner. When a deficiency is determined, the reasons given do not constitute or confine the issues. *Edgar M. Carnrick*, 21 B.T.A. 12, 21. The petitioner may in his petition assail the deficiency for reasons not theretofore suggested and may go so far as thereby to convert the deficiency into an overpayment, and the respondent may, on the other hand, defend on new grounds, and the Board has jurisdiction to increase the deficiency. *Altschul Tobacco Co.* v. *Commissioner*, 42 Fed. (2d) 609; *Francisco Sugar Co.* v. *Commissioner*, 47 Fed. (2d) 555. The primary issue is the correctness of the ultimate determination of deficiency, and the ordinary presumption is not destroyed by the reason given, even if it be unsound or badly expressed.

The petitioner contends first that the 1,800 shares of stock of the Machine Co. owned by the decedent were issued to her under circumstances creating a resulting trust in favor of her husband and for that reason no part of the proceeds of the check for $1,070,086.11, the dividends aggregating $108,000 paid on the stock in 1925 and 1926, and further payments of $78,205 made to the husband after the death of his wife on account of said stock should be included in the gross estate.

It appears to be well settled, as the petitioner contends, that where a husband pays the consideration for property and has title taken in the name of his wife, the presumption is that a gift was intended and that this presumption of fact may be overcome by evidence that the transfer was intended as a trust. See *Smithsonian Institution* v. *Meech*, 169 U.S. 398; Perry on Trusts and Trustees, sec. 224.

Having alleged the existence of a trust relationship as to the stock involved here, it is the duty of the petitioner to overcome the presumption against it. The evidence here is against the establishment of a resulting trust with the beneficial interest in Charles W. Shartle.

It is firmly established that where a conveyance of property is voluntarily made for some fraudulent purpose, such as to hinder, delay, or defraud creditors, no resulting trust arises in favor of the grantor. Perry on Trusts and Trustees, secs. 164–165; *Schultz* v. *Schultz*, 274 Ill. 341; 113 N.E. 638; *Surye* v. *Lemberger*, 92 N.J. 656; 114 Atl. 454; *Faris* v. *Faris*, 250 Mich. 659; 230 N.W. 945. The rule was stated by the court in the case of *Saint* v. *Saint* (Cal.), 7 Pac. (2d) 374, in language as follows:

No rule is more strictly adhered to than the rule that equity will not lend its aid to establish a trust or enforce a contract which is tainted with fraud. \* \* \*

It is equally as firmly established that where property is conveyed for the purpose of hindering, delaying, or defrauding creditors, neither the grantor nor persons claiming under him can recover the property by an action in equity. *Burgett* v. *Burgett*, 1 Ohio, 469; *Barth* v. *Severson*, 191 Iowa, 770; 183 N.W. 617; *Jamison* v. *Wells* (Texas), 236 S.W. 806; *Spaulding* v. *Spaulding*, 87 W.Va. 326; 104 S.E. 604; *Rentoul* v. *Sweeney* (Del.), 137 Atl. 74; *McRae* v. *MacRae* (Ariz.), 294 Pac. 280; *Penland* v. *Wells*, 201 N.C. 173; 159 S.E. 423. In the last case cited the court said:

In *New York* v. *Merritt, supra* [77 N.C. 213; Id., 80 N.C. 285], the court said: "Where both parties have united in a transaction to defraud another, or others, or the public, or the due administration of the law, or which is against public policy, or contra bonos mores, the Courts will not enforce it in favor of either party." The entire doctrine is based upon the "clean hands" concept of equity. The plaintiff alleges "that prompt action was necessary in order to defeat such litigation and thereby preserve his property for his own use and benefit." While the plaintiff denies that there was any merit in the threatened litigation, it is quite obvious that he was attempting to get his fodder out of the field before the storm broke.

The petition alleges that in 1911 Charles W. Shartle "became heavily indebted" by reason of expenditures made for the enlargement of his plant and that he might become involved in patent infringement litigation over the patents he held and used in the business he was then conducting as a sole proprietor. This liability, the petition alleges, seriously impaired Shartle's credit and made it difficult for him to obtain bank loans to conduct his expanding business.

Shartle testified that he organized the Machine Co., the corporation, "to relieve me from any reponsibility from any suit for infringements on patents developing—which I was developing," and to avoid personal liability "for any personal debt which I might contract." Upon being asked in direct examination what he said to his wife concerning the issuance of most of the stock of the Machine Co. to her, he testified: "I explained to her that the reason was to protect the company through her, and to protect me from damage in a lawsuit." H. D. Martindale, the only other witness who gave any testimony on the question, testified on behalf of the petitioner that Shartle became "very heavily financially involved" by reason of the paper mill project and that Shartle had the stock issued to his wife "for his own protection." In reply to a question on direct examination as to why Shartle had the stock issued to his wife, Martindale testified: "He said to put it in her name for the simple reason that if these endorsements for the purposes of the settlement of the overdraft of the National Paper Mill was [sic] enforced against him he would be in a terribly difficult situation, and that he

wanted these stockholdings put in her name, at least, until the National situation [paper mill project] was cleared up."

We do not think it is important that we know the amount of Shartle's indebtedness to the bank for overdrafts or the seriousness of prospective litigation growing out of the patents Shartle held. The amount involved was doubtless large, otherwise it would not have caused him so much concern. He determined to have title to the stock about to be issued in exchange for his property taken in the name of another, believing that such a course of procedure would place the property beyond the reach of his creditors, present and future. In an effort to accomplish his purpose, he caused stock issued by the Machine Co. and the Continuous Beater Co. for his property to be made out in favor of his wife, and advised her of the reason for his action. Under the circumstances, we do not think that if its aid were invoked a court of equity would decree a resulting trust of the stock in favor of the grantor, but would leave the grantor and grantee where it found them.

Upon the consolidation of the Continuous Beater Co. with the Machine Co., the decedent received additional shares of stock of the latter corporation for her stock of the former corporation. Thereafter in 1924, when the corporation declared a stock dividend, the decedent delivered her stock to the corporation, and in lieu thereof received a new certificate for 1,800 shares. The canceled stock certificates bear blank endorsements of the decedent. The new certificate remained in the name of the decedent until the sale of the stock in 1926. Dividends paid on the old certificates in 1918, 1922, and 1923 were reported in income tax returns filed by the decedent for those years. The dividends paid on the new certificate in 1926, together with the profit realized from the sale of the stock, were shown in the income tax return filed for the decedent for that year.

Little evidence was offered as to the circumstances of the stock dividend declared in 1924. All we know is that Shartle requested the stockholders to turn in their stock certificates and issued instructions concerning the issuance of new certificates. It does not appear that the decedent expressly relinquished any of the absolute title she had in the old certificates in favor of her husband and it is not shown that Shartle, acting in his individual capacity, and his wife had any understanding concerning the transaction. Nothing appears contrary to the assumption that the decedent and other stockholders merely surrendered their stock to the corporation for the purpose of receiving additional shares under the stock dividend declared. The circumstances connected with the issuance of the new stock certificate are not sufficient to raise a resulting trust of the stock in

favor of the decedent's husband. Our opinion is, and we so hold, that the stock was owned by the decedent until its sale in 1926.

Having held that there was no trust of the stock in favor of Charles W. Shartle, and that the stock was the property of the decedent, it follows that the payments aggregating $78,205 made after the decedent died, in liquidation of the corporation and on account of the sale of the stock and a portion of the corporation's assets, constitute a part of the decedent's gross estate.

The decedent having been the legal owner of the stock until it was sold by her, the presumption is that the check received as part of the purchase price of the stock was hers until title thereto was disposed of by gift or otherwise. If it was, in fact, transferred to Charles W. Shartle for the purpose of conveying absolute title, we do not think it was transferred in contemplation of death, for we think the dominant motive was other than the thought of death. The petitioner insists that the evidence establishes a completed gift *inter vivos* to Charles W. Shartle.

We have frequently said that to constitute a gift there must be (1) an intention on the part of the donor to give; (2) an acceptance of the gift by the donee; and (3) a transfer to title accompanied by delivery of the property. *J. T. Hedrick*, 24 B.T.A. 444, and cases cited therein, and *J. D. Varnell*, 28 B.T.A. 231. See also *Allen-West Commission Co. v. Grumbles*, 129 Fed. 287; *Edson v. Lucas*, 40 Fed. (2d) 398. The essential elements of a gift from a wife to her husband are the same, *In re Remmerde*, 206 Fed. 826, and clear evidence is required to establish such gifts. *Stickney v. Stickney*, 131 U.S. 227; *In re Carpenter*, 179 Fed. 743; *MacDade v. Reilly* (N.J.), 129 Atl. 408. It has been held that where a husband acquires possession of the separate property of his wife, as here, with or without her consent, without direct evidence of intention to make a gift of it to him, the husband will be deemed to hold the property in trust for her. *Stickney v. Stickney, supra; Parrett v. Palmer*, 8 Ind. App. 356; 35 N.E. 713; *In re Carpenter, supra;* Perry on Trusts, sec. 666.

We find no reason to question the sufficiency of the endorsement to transfer title to the check, or the delivery of the paper. What is lacking is proof of an intention on the part of the decedent to give and an acceptance of the check by her husband as a gift.

The husband testified on direct examination that the decedent endorsed the check in his presence at his request in the offices of the First & Merchants National Bank and that without saying anything to her he took the check to the cashier's desk for deposit to his account. On cross-examination he testified that he did not give the cashier any instructions as to whose account to credit the check and that subsequently he learned that the proceeds had been credited to

his bank account. E. F. Shirely, executive vice president of the bank, testified that Charles W. Shartle requested him to place the check in his account. Whether this request, if made, was made in the presence of the decedent, does not appear. The petitioner places considerable reliance upon the testimony of Charles W. Shartle, Jr., a son, who was present at the bank when the check was endorsed. Upon being asked whether his mother said anything to his father when handing the endorsed check to him, he testified:

Yes, she remarked, as it stands out in my mind, that she hoped he would enjoy the money as he had his work, and she handed the check back to him and he handed it over to Mr. Shirely, along with his check.

Shirely was present when the transaction occurred and although he was asked what transpired at that time, testified to no remark made by the decedent to her husband when returning the check to him. Assuming that the remark was made, it contains nothing to prove intention to make a gift of the check. The same language could have been used to express the same thought in connection with the delivery of money for an entirely different purpose.

Prior to the time the sale was closed the decedent and her husband considered forms of investment of the proceeds of the sale, but the testimony relating to the discussion throws no light on the question of her intent to make a gift. Charles W. Shartle used approximately $1,000,000 of the proceeds of the check to buy United States Government coupon bonds and upon their delivery to him on November 13, 1926, placed them in a money box in the bank vault. It does not appear whether the bonds were purchased in his or her name.

It does not appear that the decedent was indebted to her husband for any sum of money or that any consideration passed to her from him for the check. In the estate tax return he filed as executor for the estate he excluded the amount of the check from the gross estate on the ground that it was delivered to him to terminate a trust in his favor. In his petition he alleged that his wife held the stock as trustee for his sole benefit and at the first hearing his counsel presented the same view. He testified that he regarded the stock as his and we have no doubt, as the petitioner claims, that in passing the check to her husband, the decedent believed she was merely giving him what she thought actually belonged to him. Obviously, the decedent could not transfer the check both as a trustee and a donor and her husband could not accept it in the double capacity of a beneficiary of a trust and a donee. This evidence is directly opposed to the idea that a gift was intended or that the check was accepted as a gift.

From all the evidence we find that the petitioner has failed to prove intention on the part of the decedent to make a gift of the check or its proceeds, or that the decedent's husband accepted the check as a gift. It follows that the amount of the check constitutes a part of the gross estate.

. The same conclusion must be reached with respect to the dividends of $18,000 and $90,000 paid on the stock in 1925 and 1926, respectively. The Machine Co. credited these dividends to the decedent's account on the corporate books and then immediately transferred them to the personal account of Charles W. Shartle. The proof is that the decedent never knew when the dividends were declared. It does not appear that the decedent ever received any consideration from her husband for the dividends paid on her stock or that she ever authorized the corporation to transfer the credits she received for them to her husband's account. On this issue we sustain the respondent for lack of proof that the decedent ever transferred title to the dividends to her husband or any other person.

Reviewed by the Board.

*Decision will be entered for the respondent.*